(No. 38259.—

The People of the State of Illinois, Defendant in Error, *vs.* Marilyn M. Moriarity, Plaintiff in Error.

*Opinion filed November 19, 1965.*

John R. Snively, of Rockford, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and William R. Nash, State's Attorney, of Rockford, (Fred G. Leach and William A. Bomp, Assistant Attorneys General, and John W. Nielsen, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Marilyn Moriarity, was jointly indicted with Norman Huntley and Harold Smith for the armed robbery of the Sta-Von Tap, a tavern in Rockford. At the time of the robbery the defendant, who was 18 years old, married, and the mother of a two-year-old child, was living with Huntley. Smith lived in a different apartment in the same building. A severance was granted, and the defendant was tried separately. A jury found her guilty of armed robbery, and she was sentenced to a term of imprisonment of not less than 5 nor more than 15 years. The case is here on writ of error.

The robbery was committed about 9:30 P.M. on June 18, 1963, by a young woman armed with a revolver. The bartender and four customers were in the tavern. One of the customers was the co-defendant Smith. Within a short time after the robbery, the defendant was brought to the tavern by police officers, and the bartender and two of the customers identified her as the woman who had committed the robbery. A third customer testified that he was not asked to identify her at that time, but he did so at the trial. The fourth customer, Smith, did not identify her. On the way to the city jail the defendant attempted to escape by jumping out of the police car.

She arrived at the jail about 10:30 P.M. on June 18, 1963, and she remained there until June 28, 1963, when she was transferred to the county jail. She had been arrested without a warrant, but a warrant for her arrest was obtained later on the night of June 18. She was not, however, at any time taken before the judge who issued the warrant, as required by statute. (Ill. Rev. Stat. 1963, chap. 38, par. 660.) On June 25, 1963, the defendant signed a confession which was admitted in evidence over her objection that it was not voluntary, but was the product of coercion. Of the many grounds upon which the defendant contends that the

judgment of conviction should be reversed, this is the only one that we find it necessary to consider.

The defendant testified that she was kept in what is called the "lock-up cell" inside the women's quarters in the city jail; that there was no mattress or blanket; that on six or seven occasions when the jailers had trouble with the lock, she got no meal. Summarizing the testimony of the police officers, the trial judge described the sanitary facilities in the lock-up cell in these terms: "You have got a toilet and you have got a sink that won't work." The defendant had seen an attorney when she was first arrested, and she told the officers that she had been advised by him not to answer questions. She was not allowed to telephone him thereafter. Her attorney was denied permission to buy cigarettes for her. When there was another woman prisoner, that prisoner was given cigarettes but was forbidden to give any to the defendant. She was questioned an hour or more each morning and afternoon. She testified that the officers told her that they could and would keep her in the city jail until she made a statement; that finally she was tired, dirty and disgusted and willing to sign anything to get out of the city jail and into the county jail. She signed the confession that was received in evidence on July 25. She testified that on the next day an investigator from the State's Attorney's office put copies of the confession on the desk beside her. "And he said, 'These aren't true. This isn't helping us.' I said, 'You bet they aren't true.' So I picked them up and tore them up. I says, 'I know they aren't.' And he says, 'You go back and lock her up in the lockup,' and they put me back."

The defendant's testimony was corroborated by police officers. As the trial judge stated, "There is no dispute she was kept in that cell most of the time. They have all testified to that." Officer Crane testified that when the defendant asked on June 22 how much longer they were going to hold her in the city jail, "I told her she would be probably

kept there until the case would be cleared up." Policewoman Bailey testified that she told the defendant that she could be held in the city jail until the investigation was completed, and that could be until her trial. Another policewoman testified that in the lock-up cell there is a toilet and a sink, "but the water is in the toilet, not in the sink." She said, however, that there was water furnished to the defendant in cups. "The jailer brings food around. And he can give her water." She also testified "that they had trouble with that key in there on a couple of occasions." No one denied that the defendant had been deprived of meals when the jailers were unable to open the lock. One of the policewomen testified that the defendant's request to telephone her attorney was refused because "At the time, it wasn't convenient—at the time, she had talked to you and we didn't think it was necessary." The other testified that she was fairly sure that the defendant had a mattress in the lock-up cell, but "I can't tell you for sure." She also testified, "We usually give the girls a sheet and blanket. If she had one in there, I can't tell you for sure. But I believe she did."

The police officers testified that the defendant was kept in the lock-up cell because she was an unruly person: "We tried to put her in the jail proper, but she would behave so noisily and everything, and hollering to the boys downstairs in the jail, and all kinds of things while she was there."

The record before us establishes that the confession was involuntary and should not have been admitted in evidence. The defendant was detained illegally. (Ill. Rev. Stat. 1961, chap. 38, par. 660.) While we have held that illegal detention alone does not render a confession inadmissible, it is an important factor in the circumstances of this case. So far as the defendant knew, the police could hold her indefinitely in the city jail, and they told her that they proposed to do so. A confession made under the circumstances shown by this record can not be regarded as the product of a voluntary decision. The only inference that the defendant could

draw was that she would be held in the city jail until she confessed. (See *People* v. *Vinci,* 295 Ill. 419.) Her statement that "I was tired, dirty and disgusted, and I just said all right" is consistent with the record.

The other errors urged by the defendant are unlikely to recur and need not be discussed. The judgment of the circuit court of Winnebago County is reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*