(No. 39071.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* HENRY MALLETT, Appellant.

*Opinion filed May 27, 1970.*

WARD, J., took no part.

James R. Thompson, of Chicago, appointed by the court, for appellant.

William G. Clark, Attorney General, of Springfield, and John J. Stamos, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane, James B. Zagel, and James B. Haddad, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Kluczynski delivered the opinion of the court:

A jury in the circuit court of Cook County, on September 28, 1964, found defendant, Henry Mallett, guilty of the murder of Henry Kruk. A death sentence was imposed and defendant appeals directly to this court.

On October 25, 1963, three men, one of whom was later identified as defendant, entered the Rockwell Inn in Chicago and announced a "stick-up." During the robbery, Martin Kruk, operator of the tavern, was shot and later died as a result of the gunshot wound. A .38 caliber revolver and fifty-five dollars in cash were taken. The police recovered the gun from Luther Wells who testified that he purchased it from defendant, a friend of his, in late October, 1963. Defendant was arrested in his apartment about 3:30 A.M. on Saturday, November 16, 1963, taken to the Maxwell Street Station and there questioned intermittently until about 8:30 A.M. Later that morning defendant was taken to the State's Attorney's office where he gave and signed a statement implicating himself.

Defendant first argues that the trial court erred in failing to grant his motion to suppress the confession. Specifically he contends it was inadmissible because (1) it was taken in violation of the principles of *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, (2) it was made while he was in custody after the issuance of an

arrest warrant and prior to his appearance before a judge and (3) it was not proved to be voluntary.

In relying upon *Escobedo* defendant argues that he was not warned of his right to remain silent and a request to consult with counsel was denied. In several cases we stated that *Escobedo* applies only to the situation where the suspect has requested and been denied an opportunity to consult with counsel, coupled with a failure to warn accused of his right to remain silent. (*People* v. *Heise,* 35 Ill.2d 214; *People* v. *McGuire,* 35 Ill.2d 219; *People* v. *Hartgraves,* 31 Ill.2d 375.) Apparently he was not effectively warned of his right to remain silent, but the only evidence in the record that he ever requested counsel before signing the confession came from defendant. All of the persons who were with him from the time of arrest until he signed the confession testified that he never made a request for an attorney in their presence. Under these circumstances the trial court was justified in finding that no request for counsel was made. Therefore, the *Escobedo* standards are not applicable and do not render the confession inadmissible.

Defendant next argues that the confession should not have been admitted because it was obtained during a period of illegal detention after he was arrested upon a warrant and before presentment to a judge. The testimony of defendant and of the police officers is in substantial agreement as to the time of the arrest, interrogation by the assistant State's Attorney and the signing of the confession. After being arrested defendant was taken to the Maxwell Street police station and held there until about 8:30 A.M. Twice during the interval between arrest and 8:30 A.M. he was taken from the station to locate people and places he mentioned in his statement. Later the police took him to the criminal court building and about 10:30 A.M. he was interrogated by an assistant State's Attorney. Thereafter, he was taken to a restaurant to eat and at 11:30 brought back to sign the confession.

Defendant does not urge us to adopt the Federal rule established in *McNabb* v. *United States,* 318 U.S. 332, 87 L. Ed. 819, 63 S. Ct. 608, and *Mallory* v. *United States,* 354 U.S. 449, 1 L. Ed. 2d 1479, 77 S. Ct. 1356, that unnecessary delay in presentment before a magistrate *per se* renders a confession inadmissible. We have repeatedly stated that the *McNabb-Mallory* rule does not rest on constitutional principles and does not of necessity apply to State criminal prosecutions. (*People* v. *Harper,* 36 Ill.2d 398, and cases there cited.) Rather, defendant urges the adoption of a limited application of the *McNabb-Mallory* rule when the detention during which a confession is obtained is after an arrest upon a warrant.

He contends that the question of the admissibility of a confession obtained after an arrest upon a warrant and prior to presentment before a judge has been presented only once before, and that was to the Supreme Court of Wisconsin in *Phillips* v. *State,* 29 Wis. 2d 521, 139 N.W.2d 41. However, in that case defendant was arrested *without a warrant* at 11:30 A.M., signed a written confession about 4:30 P.M., was presented to a magistrate the following day, and the confession was held admissible.

Under the statute (Ill. Rev. Stat. 1963, ch. 38, par. 109—1) the duty of the arresting officer to take an arrested person before a judge without unnecessary delay is the same whether arrested with or without a warrant. Here it was obviously impractical to take defendant before a judge immediately upon arrest at 3:30 A.M. on Saturday. Failure to present defendant to a judge prior to 11:30 A.M. does not appear to be so unreasonable as to require automatic exclusion of a confession obtained during detention after arrest upon a warrant. "The legislative directions that an accused be taken before a magistrate 'forthwith' or 'without unnecessary delay' cannot mean that police officers forsake all other duties to comply, and neither can they mean that the police do not have reasonable latitude to fully

investigate a crime." *(People* v. *Jackson,* 23 Ill.2d 274, 280.) While defendant was in custody from 3:30 to 11:30, a considerable portion of that time was spent in traveling from place to place. The questioning was not continuous and intensive during this time but was done intermittently. There is no evidence that defendant was led to believe he could or would be held indefinitely if he did not confess. *(Cf. Davis* v. *North Carolina,* 384 U.S. 737, 16 L. Ed. 2d 895, 86 S. Ct. 1761; *People* v. *Moriarity,* 33 Ill.2d 399.) The detention was not so unreasonable or oppressive as to require exclusion of the confession.

Defendant also argues that the State failed to prove the voluntariness of the confession. He testified that he was arrested in the early morning hours by four armed policemen, handcuffed in the squad car and struck several times, handcuffed to a window screen in the police station until about 8:30 A.M., was not provided with food, and was not warned of his right to consult with counsel or to remain silent. He does not complain about his treatment during the interval from approximately 8:30 A.M. until he arrived at the criminal court building. The State's witnesses denied that defendant was ever hit. They testified that one of his arms was handcuffed to a window screen for a time while another arm was free, and while so handcuffed he was seated on a chair with a padded seat cushion and back rest. Defendant was not questioned continuously but was twice taken from the station in order to direct police officers to people and places referred to in his statement. They further testified that defendant never requested food and when taken to a restaurant shortly after 10:30 A.M., he said he was not hungry and did not finish what he had ordered.

It is defendant's theory that the circumstances with regard to his (1) intelligence, schooling and race, (2) conditions of arrest, (3) detention conditions, (4) legality of custody and (5) constitutional warnings, although not individually sufficient to invalidate the confession, when taken

together result in a statement which was not voluntarily made and which should therefore not have been admitted in evidence. These factors will be considered separately and then collectively.

We have stated that consideration should be given to a defendant's age, education and experience at the hearing on the motion to suppress. (*People* v. *Cocroft,* 37 Ill.2d 19; *People* v. *Nemke,* 23 Ill.2d 591; *People* v. *Hall,* 413 Ill. 615.) The defendant is a Negro who attended a graded elementary school for three years. After third grade he went to an ungraded school for emotionally disturbed boys, and thereafter, at age 16, was transferred to a continuation school. When he was 9 years and 7 months old, his mental age was, according to a revised Stanford-Binet test, 7 years and 4 months and he had an IQ of 77 which is in the dull to normal range. The record does not show how long defendant remained in school or what his level of education or intelligence was at the time of making the confession. He was then 22 years of age, married, the father of two children and had previously served 90 days for petty larceny, 3 months for malicious mischief, 4 months for tampering with an automobile, and 6 months in Vandalia and was given one year probation for petty larceny.

Here, as in *Cocroft,* defendant's testimony at the hearing on the motion to suppress was lengthy and cross-examination substantial so as to afford the trial court sufficient opportunity to observe and evaluate his education, intelligence, experience and ability to comprehend the significance of his statements.

The second factor concerns the manner of arrest. Defendant was arrested about 3:30 A.M. by four armed policemen. They knew they were dealing with a man suspected of violence, murder and armed robbery. He had left his home and spent several weeks in Detroit while the police were looking for him. In making an arrest of such a person, means otherwise considered improper may be utilized

in order to insure the safety of the police officers and avoid flight by the defendant. (*People* v. *Macias*, 39 Ill.2d 208.) The manner of arrest was not unreasonable and would not reasonably tend to cause a confession to be made some seven hours later.

The conditions of detention of which defendant complains, as set forth in the facts earlier, were not so unreasonable or oppressive as to coerce or pressure defendant into making a confession.

Defendant contends that his being held in custody was illegal because he was not immediately brought before a judge after his arrest. He was arrested early on a Saturday morning and was not presented to a judge until after 11 :30 A.M. We have consistently said that illegal detention does not *per se* render inadmissible a confession otherwise voluntarily made, but is merely a factor to consider in determining voluntariness. (*People* v. *Wallace*, 35 Ill.2d 251 ; *People* v. *Novak*, 33 Ill.2d 343 ; *People* v. *Price*, 24 Ill.2d 46.) For reasons stated earlier in considering the legality of detention this factor does not require exclusion of the confession.

Finally, defendant argues that the failure to be warned of his right to consult with counsel and to remain silent is a significant factor in determining whether a statement is voluntary. However, since the trial was prior to the decision in *Miranda* v. *Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, this alone does not render the confession inadmissible.

In considering the totality of the circumstances surrounding the making of the confession : including the factors of age, education and experience of defendant, who was in school at least until age 16, for whom no proof of intelligence or mentality at the time of making the confession was offered, and as to whom substantial experience with the criminal courts was shown; conditions of arrest, which were not unreasonable under the circumstances and which were not shown to have affected defendant's will;

detention conditions which were not oppressive; legality of custody which was not for an unreasonable length of time; and failure to give constitutional warnings against self-incrimination or right to counsel, we do not believe the trial court's determination on the question of voluntariness of the confession was against the manifest weight of the evidence. Therefore, we will not disturb its ruling. *People* v. *Wallace,* 35 Ill.2d 251; *People* v. *Hartgraves,* 31 Ill.2d 375.

Defendant urges as his second ground for reversal the fact that he was first tried on a subsequent indictment charging a subsequent offense of robbery thereby depriving him of a fair trial on the murder charge. He argues that because of the robbery conviction he was, in effect, deprived of his right to testify in his own behalf at the murder trial because, had he done so, the State could have proved he had previously been convicted of the offense of robbery, thereby impeaching his credibility. This argument must fail for two reasons. Defendant did not testify and did not raise the objection that he was prevented from testifying by virtue of his prior conviction, therefore, he cannot raise the question for the first time on appeal. (*People* v. *Ostrand,* 35 Ill.2d 520.) Secondly, it appears that the delay in trying the murder charge after the robbery charge was not the result of manipulation of the court calendar by the State in order to establish a prior felony conviction, but rather was caused to a great extent by defendant's actions. Continuances in the murder trial until March 23, 1964, were by agreement, and thereafter four more continuances were granted to June 22, 1964, upon defendant's motions. Thereafter the court ordered the cause continued until June 23, 1964, and on that date, the date of the robbery trial, the murder trial was ordered to be held on call, day to day. On June 25, 1964, the case was again continued by agreement until September 14, 1964, at which time counsel for defendant indicated he was not then ready to proceed to trial but only to a hearing on the motion to suppress the confession.

In the only case cited by defendant in support of this position (*Commonwealth* v. *McIntyre,* 417 Pa. 415, 208 A.2d 257,) a murder conviction was reversed when defendant's credibility was impeached by use of a criminal record consisting of offenses which were all committed after the date of the homicide. In so doing the court said that since it was within the discretion of the Commonwealth to schedule criminal trials they could not be permitted the opportunity of arranging the trial of cases so that a criminal record might be created where none would otherwise exist if earlier offenses were tried promptly. Actual manipulation of the court calendar must be proved even under the *McIntyre* rule. *Commonwealth* v. *Conard,* 206 Pa. Super 33, 211 A.2d 14.

Defendant also argues that an instruction regarding the confession deprived him of a fair consideration by the jury of the value of the confession as evidence. The instruction given is as follows: "It is the duty of the jury to consider all the evidence which the Court has admitted as competent for their consideration, and they have no right to disregard the evidence of any confession which the Court has permitted them to hear. The jury are the exclusive judges of the credibility of the confession and the weight which should be given it as proof. They shall take into consideration all the circumstances in evidence in regard to the making of the confession in determining its truth or falsity. Whether the confession is true or false, or partly true and partly false, is a question for the jury to determine. It is for the jury to consider and weigh the confession and give it such credit as it may be entitled to in the judgment of the jury." Defendant did not object to this instruction in the trial court and, therefore, it is not necessary to consider the question here.

On rehearing, defendant urges for the first time that his trial court-appointed counsel was incompetent. By our rules (43 Ill.2d R. 367) and decisional law (see *Scott* v. *Scott,* 307 Ill. 586, 592, and cases cited therein) a new con-

tention cannot, for the first time, be urged in a petition for rehearing. Rule 367(b) specifically provides for rehearing on only those "points claimed to have been overlooked or misapprehended by the court" in its original opinion. Having failed to raise this contention on his original hearing, he may not urge it on rehearing.

After this appeal was perfected, orally argued and submitted to us, the defendant's motion for leave to file a supplemental brief and to further argue the cause orally was allowed. This unusual action was the result of the decision by the United States Supreme Court in *Witherspoon* v. *Illinois,* 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770. The purpose was to allow the parties to present their views on the import and effect of *Witherspoon* on this case.

In *Witherspoon,* the Supreme Court held that a death sentence could not constitutionally be executed if imposed by a jury from which have been removed for cause those who "voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 391 U.S. at 522, 20 L. Ed. 2d at 785.

In the present case, 38 out of 88 prospective jurors (43% of all prospective jurors examined and 50% of the jurors excused) were excused for cause after they expressed religious, conscientious or moral scruples against the imposition of the death penalty in a proper case. Of the 38 prospective jurors so excused for cause, it appears that 27 (or 36% of all prospective jurors excused) were probably erroneously dismissed under the standards later enunciated in *Witherspoon.* Only 11 of the prospective jurors stated unequivocally that they would not or could not inflict the the death penalty in a proper case. And, the record reveals a conscious design on the part of the State to empanel a jury which not only would impose the death penalty but would do so without hesitation. It is clear that the sentence of death imposed on this defendant cannot be carried out, since the jury that recommended it was selected in violation

of *Witherspoon.* See also *People* v. *Lee,* 44 Ill.2d 161; *People* v. *Doss,* 44 Ill.2d 541.

Accordingly, we remand this case to the circuit court of Cook County for resentencing to a penalty other than death.

*Affirmed, and remanded for resentencing.*

Mr. Justice WARD took no part in the consideration or decision of this case.