The People of the State of Illinois, Plaintiff-Appellee, *v.* Ross Militell, Defendant-Appellant.

(No. 70-272;

Second District—September 27, 1971.

Frank Wesolowski, of Defender Project, of Wheaton, (Robert Heise, of counsel,) for appellant.

William V. Hopf, State's Attorney, of Wheaton, (Ralph J. Gust, Jr., and Malcolm F. Smith, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The defendant was tried before a jury and convicted for the offenses of theft, burglary and criminal damage to property by the Circuit Court of Du Page County. This appeal is based on his contention that the trial court erroneously denied his pre-trial motions to suppress certain admissions and confessions made by him, and his consent to search his prem-

ises. A hearing on that motion was held by the court on October 1, 1969, and the following evidence presented.

At approximately 12:40 A.M. on June 27, 1969, officers James Russell and Bruce Eggert of the Elmhurst Police Department were directed to 228 North Addison Street in the city pursuant to a telephone call from a resident of the neighborhood. They found the defendant laying face down in a driveway moaning and complaining that he was having a heart attack. Donald Robbins was also at the scene and when the police noticed Robbins throw two cans of malt liquor into nearby bushes the officers advised both men that they would be arrested for public intoxication. Russell then read the so-called Miranda warnings to them from a card carried in his wallet and asked the defendant if he understood his constitutional rights. The defendant responded that he did understand and that he had a couple of beers earlier that night and that he was having trouble breathing. The defendant said he was in pain and asked the police to take him to the hospital. An ambulance was called and the defendant was carried by stretcher to the ambulance and driven to a nearby hospital where he arrived about 1:00 A.M.

Russell and Eggert followed the ambulance to the hospital and entered immediately after the defendant was admitted and found him on a cart bed still complaining of chest pains. Russell noticed that his eyes were red and that his mouth appeared to be dry. Although the defendant was responsive to questions and coherent, Russell was of the opinion he was under the influence of intoxicating liquors but not to the extent that he could not understand what was said to him. The defendant was examined by a physician who informed Russell and Eggert that he appeared to be under the influence of a drug. Russell then read the Miranda warnings to the defendant a second time and, as he and Eggert started to leave his hospital room, the defendant called them back and told them he had taken four "reefers and a half of tab". He then admitted to the officers that he had committed the series of burglaries for which he was ultimately convicted and told them to go to his room where they would find the stolen property.

The defendant's brother, also an Elmhurst police officer, arrived at the hospital after he had made his admissions to Russell and Eggert. He also thought the defendant was under the influence of liquor but was able to understand what was said to him and what was going on and was in "control of his faculties".

After about an hour and a quarter at the hospital, the defendant was on his feet and taken to the Elmhurst police station where he arrived at 3:30 A.M. He was taken to the detective room at the station where, after the Miranda warning was read to him a third time, he signed a

waiver of his rights to remain silent and gave a complete statement to detectives Moos and Dahleen. That statement was typed up and signed by the defendant at about 5:30 A.M. Although the defendant appeared tired and "mussed-up", Moos was of the opinion that he was not under the influence of either liquors or drugs or that there was anything abnormal about his condition.

The defendant testified that he was 19 years of age on June 26, 1969 and that he was at a party in his apartment with a few of his friends on that evening. At about 9:30 P.M. he took a "half of tab of strawberry swirl" that he described as a compound of speed, acid (LSD) and methedrine. About 45 minutes later the defendant began to experience dizziness and hallucinations from the swirl but went to an adjoining apartment where he drank some beer and smoked marijuana cigarettes. He described the hallucinations as changing colors or "bleeding" of the walls. He returned to his apartment where he became sick and started to scream and pound his door for help. He ran from the apartment and collapsed in the driveway where he was found by the police. He remembered asking the police to help him but did not recall that he was advised of his constitutional rights until he was at the hospital. The defendant further testified that the walls at the hospital were also "bleeding" and though he recalled that the police officer read his rights to him there he did not recall that he made any response or that he understood them. He remembered nothing else until he was incarcerated in the county jail.

A psychiatrist who examined the defendant at the county jail also testified for the defense. He related that the defendant had, at one time, sniffed glue and had been discharged from the armed services for using drugs. It was his opinion that the defendant was a pleasure-seeking, insecure young man. He was unable, however, to give an opinion in response to a hypothetical question propounded to him based on the evidence in the record if the admissions or confessions were voluntary.

At the conclusion of the hearing, the trial court commented that the evidence showed that at all times the defendant was responsive to questions, was coherent, and appeared to understand what transpired around him and denied the motions to suppress.

The defendant here contends that the correct test to be applied to the case is not his responsiveness or apparent coherency at the time he was interrogated but rather the existence of the requisite free will to voluntarily waive his constitutional right to remain silent. His brief includes excerpts from medical journals to the effect that various objective physical symptoms can be detected after the ingestion of certain drugs. Marijuana, for instance, causes rapid heart beat and reddening of the

eyes and speed or methadrine causes dry mouth. LSD, even when taken in small doses, can cause tightening of the chest, vivid hallucinations and delusions. More significantly, it is pointed out that some experts have found that LSD can induce a state of passivity or suggestibility in the user.

The United States Supreme Court did, in the case of *Townsend v. Sain* (372 U.S. 293, 9 L.Ed.2d 770, 83 S.Ct. 745), enunciate the rule in regard to the admission of confessions into evidence. "If an individual's 'will was overborne' or if his confession was not 'the product of a rational intellect and a free will' his confession is inadmissible because coerced. These standards are applicable whether a confession is the product of physical intimidation or psychological pressure and, of course, are equally applicable to a drug-induced statement [citations omitted.]."

Townsend, a confirmed heroin addict with sub-normal intelligence, was in custody and suffered severe withdrawal symptoms. A police physician gave Townsend an injection of hyoscine (a so-called truth serum) and he confessed to a number of previously unsolved crimes.

In *Pea v. United States,* 397 F.2d 627, cited by the defendant, the accused was in a hospital suffering from a concussion from a self-inflicted bullet in his head when he made an oral confession to a police officer. Although it was uncontradicted that Pea was coherent, the examining physician testified that he was lethargic and indifferent to protect himself. Under these circumstances, the U.S. Court of Appeals, District of Columbia Circuit, found that Pea did not possess the free will and rational intellect as required by the Townsend rule since he was devoid of his normal will to protect himself and that the confession was inadmissible.

In Illinois, Section 114-11 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 114-11) provides that where, as here, a defendant moves to suppress a confession, the State has the burden to go forward with the evidence to prove that the confession was voluntary. The State need not prove the voluntariness beyond a reasonable doubt, however, but only by a preponderance of the evidence. (*People v. Johnson,* 44 Ill.2d 463, 470, 256, N.E.2d 343; *People v. Coddington,* 123 Ill.App.2d 351, 369, 259 N.E.2d 382.) In addition, the determination of the trial court on this issue will not be disturbed unless against the manifest weight of the evidence. *People v. Mallett,* 45 Ill.2d 388, 395, 259 N.E.2d 241; *People v. Johnson, ibid.*

It is, thus, necessary for us to weigh if the determination of the trial court, considered in light of the *Townsend* rule, was against the manifest weight of the evidence.

Officers Russell, Militell, and Moos, who testified at the pre-trial hear-

ing, all agreed that the defendant appeared alert, responded to all questions put to him, and was coherent. Russell and Militell were of the opinion that he was under the influence of intoxicating liquor but was able to understand what was being said. Although the officer Militell admitted that he "jostled" his brother at the hospital, this was done after he had given his statements to Russell and Eggert. There was no other evidence of any physical coercion, intimidation or threats to the accused.

The only direct evidence that the defendant had used drugs on the night he was arrested was the testimony of the accused himself. His testimony contained numerous contradictions and inaccuracies and it appears that the trial court placed little credence on his testimony as to the quantity and effect of the drugs, if any, had had taken. He first stated that he had never taken a strawberry swirl before June 26 but then admitted he had taken two full tabs on June 25. He recalled that the Miranda warnings were read to him at the hospital before his brother arrived but then stated he did not recall if his brother was at the hospital at all. He also testified that he understood his constitutional rights but then denied that.

Although there was testimony that the defendant's eyes were red, his mouth was dry and he had chest pains, all symptoms of drug use as listed in defendant's brief, there was no evidence that his free will was overborne or that his statements were wrung from him during drug-induced passivity. Indeed, officer Russell testified that the defendant called him back into the room as he was leaving and gave him the initial statement. As we have seen, that original statement was repeated and expanded at the police station and signed by the defendant after it had been transcribed and nowhere does not appear that the statements, admissions and confession were suggested by his interrogators.

Although the defendant recognized his signature on the bottom of his confession, he testified that he did not recall signing it or making any statements to anyone. He recalled only the bleeding walls at the hospital and nothing at all that transpired at the police station. His testimony, if believed, would establish a complete and fortuitous (for him) blackout of everything that he did or said after he was given the Miranda warnings in the hospital.

■ Under the circumstances, the finding of the trial court was not against the manifest weight of the evidence and should be affirmed.

Judgment affirmed.

SEIDENFELD and GUILD, JJ., concur.