THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. PHILLIP HAGAR, Defendant-Appellee.

Third District    No. 3—86—0739

Opinion filed September 17, 1987.

Edward F. Masters, State's Attorney, of Joliet (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Barry S. Pechter, of Ettinger & Pechter, Ltd., of Oak Lawn, for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

On July 1, 1986, a report relative to the physical and sexual abuse of a four-year-old child was reported to the Department of Children and Family Services (DCFS). On July 2, 1986, DCFS investigator John Austin contacted the parents of 17-year-old Phillip Hagar, the alleged perpetrator, to bring him in for an interview. Austin notified the Will County sheriff's department that Hagar was coming in to the DCFS.

Hagar's parents brought him to the DCFS on July 3 for an interview. The Will County sheriff's investigators arrived at the DCFS before Hagar arrived. Austin discussed the case with them and instructed them to wait in the outer office while he interviewed Hagar. Mr. Austin interviewed Hagar alone for 15 to 20 minutes. Austin explained the facts in the preliminary report concerning the incident. Initially, Hagar denied any wrongdoing. Austin left the interview room after Hagar stated that something had in fact occurred. Austin obtained the assistance of another investigator, Paul Cioliono.

Austin and Cioliono returned to the room where Hagar remained. During the 30- to 35-minute interview Hagar made an oral statement admitting that he had sexually abused the child by twice inserting his finger inside of her vagina. Hagar then agreed to and did give a written statement in accord with his verbal statement. Neither Austin nor Cioliono had given Hagar *Miranda* warnings prior to the interview or the written statement. (In *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the court declared that, before an in-custody interrogation, an accused must be informed of various constitutional rights. If a defendant is not so admonished and fails to make a voluntary, knowing, and intelligent waiver, the statement cannot be admitted.)

Austin then left the room and spoke with Hagar's parents. He told them their son had made a statement of guilt and the Will County sheriff's investigators wished to speak with him.

Austin handed the Will County investigators the written statement and brought them into the room with Hagar. The sheriff's investigators gave Hagar *Miranda* warnings. Hagar initially denied the asserted allegations. After a 45-minute interview Hagar made a

statement of guilt.

Hagar was indicted on a charge of aggravated criminal sexual assault. He filed a motion to suppress statements which had been made to the DCFS investigators as well as to the investigators from the Will County sheriff's department.

On October 17, 1986, a hearing was held on the motion to suppress statements. The trial judge heard arguments from respective counsel. The trial judge concluded that the investigators from the DCFS deliberately attempted to evade and avoid the consequences of advising the defendant of his rights to remain silent and to have counsel. The motion to suppress was granted. The State appeals the trial court's ruling.

■ On appeal the State contends that the investigators from the DCFS were not required to advise the defendant of the *Miranda* warnings. It further contends that irrespective of any potential *Miranda* violation, the defendant's subsequent statement to the Will County sheriff's investigators was admissible evidence.

The Illinois appellate courts have viewed questions on suppression motions as primarily factual determinations that will not be reversed on appeal unless "manifestly erroneous" or against the manifest weight of the evidence. (*People v. Mallett* (1970), 45 Ill. 2d 388, 259 N.E.2d 241.) Questions of credibility are to be resolved by the trial court. *People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525.

■ The rule of *Miranda* applies only to confessions obtained while the defendant is in custody or is otherwise deprived of freedom in some significant way. (*People v. Finklea* (1983), 119 Ill. App. 3d 448, 456 N.E.2d 680.) In Illinois a determination of whether the defendant was in custody will turn on a two-pronged analysis depending on both the intent of the officer and the understanding of the suspect. The understanding of the suspect is based upon an objective test of whether a reasonable person would believe that under the circumstances he or she was free to leave the scene of the interrogation or whether he or she had been deprived of freedom in some significant way. *People v. Clark* (1980), 84 Ill. App. 3d 637, 405 N.E.2d 1192.

■ ■ In making the objective determination, Illinois courts have considered several factors, including: (1) the place of interrogation; (2) statements or nonverbal conduct indicating an accused is not free to leave; (3) the extent of the knowledge of the law enforcement officers and the focus of their investigation; and (4) the intention of the officers. (See *People v. Newsome* (1983), 117 Ill. App. 3d 1005, 454 N.E.2d 353.) Under this objective test, the defendant may be found to be in custody for *Miranda* purposes even when the officers assert he

or she is free to leave, if the nonverbal conduct indicates the contrary is true. (*People v. Berry* (1984), 123 Ill. App. 3d 1042, 463 N.E.2d 1044.) It has even been held that an interrogation in the suspect's own home can fall within the purview of *Miranda*. See *Orozco v. Texas* (1969), 394 U.S. 324, 22 L. Ed. 2d 311, 89 S. Ct. 1095; *People v. Hoffman* (1980), 81 Ill. App. 3d 304, 401 N.E.2d 323.

Application of the above factors to the evidence introduced at the suppression hearing establishes that the trial court's decision was not manifestly erroneous. The totality of the circumstances in the instant case indicate that the defendant was in a custodial situation. Hagar was questioned in a windowless room with three chairs and a table in it. He was escorted into the room by Mr. Austin after his parents brought him to the DCFS offices. The door was kept closed at all times and when anyone left or entered the room, the door was again closed. Hagar was at all times considered the perpetrator of the criminal act and was thus the accused and not the subject of an ongoing "investigation" to find out facts and circumstances surrounding an alleged crime.

The Will County sheriff's investigators were on the premises and awaiting word from Mr. Austin to commence their own interrogation. The testimony elicited at the hearing indicated that the sole purpose of the DCFS interview was to get a confession of guilt. The Will County sheriff's investigators refused to let the defendant see his parents until after the interview was concluded. One of the Will County investigators testified that he believed the defendant was in a "custodial setting."

■ We also note that the defendant has a history of mental disorders. This is a most relevant characteristic when assessing whether the confession was voluntary. Illinois courts have frequently looked to the intellect of the suspect when determining whether a statement was voluntary.

In *People v. Berry* (1984), 123 Ill. App. 3d 1042, 463 N.E.2d 1044, the court suppressed a confession given by a 17-year-old of subnormal intelligence when the police conduct "border[ed] on deception." In *People v. Stone* (1978), 61 Ill. App. 3d 654, 378 N.E.2d 263, the court overturned the admission of a 17-year-old boy's confession to indecent liberties with a child. The emotional vulnerability of the defendant was the primary factor leading to suppression of the statement.

In the instant case, the defendant was 17 years old at the time he was questioned by the DCFS investigators. He has only a 10th-grade education, having dropped out of high school in his sophomore year. He has been in counseling during the past seven years at the Will

County Mental Health Center and other institutions. In December of 1985 he was admitted to the psychiatric ward of Olympia Osteopathic Hospital and was later transferred to the Madden Mental Health Center, where he remained for approximately two weeks. While not "subnormal," he was certainly vulnerable in the institutional setting.

At the suppression hearing the DCFS investigator testified that under department policy and State law, he as a DCFS investigator was not required to read *Miranda* warnings. The investigator was relying on the case of *People v. Bradley* (1984), 128 Ill. App. 3d 372, 470 N.E.2d 1121. Upon appeal the State contends that under the proposition of law enunciated in *Bradley*, DCFS investigators are not required to give *Miranda* warnings prior to questioning.

In *Bradley* the court held that the admission of an inculpatory statement volunteered to a DCFS caseworker was not violative of the defendant's constitutional right against self-incrimination. In *Bradley*, the defendant made the statements to the caseworker while she was visiting the defendant's home.

The facts in the instant case are distinguishable from those at bar in *Bradley*. In the instant case the statement was deliberately elicited from the defendant for prosecutorial purposes. The statement was made in a custodial environment at the DCFS office, not at the defendant's home. Most critically, the principals at issue in the instant case are "investigators" whose role is to inquire into abuse and neglect charges, and instigate charges where appropriate. In *Bradley* the court addressed the actions of a "caseworker" whose role was to give counseling and who did not solicit or encourage the subject "confession." We conclude that the rule of law in *Bradley* is inapplicable to the facts in the instant case.

■ This court concludes that, while we would not impose upon all DCFS investigators the obligation of reciting *Miranda* warnings to all suspected perpetrators, the facts of the case at bar compel the giving of the *Miranda* warnings. We have given due consideration to both the characteristics of the accused and the details of the interrogation. Indeed, based upon the totality of the circumstances surrounding the confession and considering the age, emotional and mental capacity of this defendant, we conclude that the trial court's findings are factually supported.

■ The State next contends that irrespective of any *Miranda* violation committed by the DCFS investigators, the statement made to the Will County investigators, subsequent to their *Miranda* warning, was admissible.

The State relies on *Oregon v. Elstad* (1985), 470 U.S. 298, 84 L.

Ed. 2d 222, 105 S. Ct. 1285, to admit the statement. In *Elstad* the court upheld the admissibility of a statement made after proper *Miranda* warnings had been administered even though the police obtained an earlier statement that was not admissible because of the failure to follow the *Miranda* procedures. Thus, under *Elstad*, if the initial statement is voluntary, even while violating the technical requirements of *Miranda*, the subsequent statement given after *Miranda* warnings is not inherently tainted.

As previously stated, this court believes, based upon the totality of the circumstances, the statement made to the DCFS investigators was not voluntary. Therefore, in accord with *Elstad*, the second statement made to the Will County investigators is deemed inadmissible. The coercive effect of an interrogation made without the aid of any advisement of *Miranda* rights cannot be dissipated and leave untarnished a subsequent statement.

For the foregoing reasons the judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY, P.J., and HEIPLE, J., concur.