THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BRIAN D. CURTIS, Defendant-Appellee.

Third District   No. 3—91—0054

Opinion filed September 25, 1991.

Erik I. Blanc, State's Attorney, of Pekin (John X. Breslin and Jay P. Hoffmann, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The defendant, Brian D. Curtis, was charged with three counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)). The trial court thereafter granted his motion to suppress his confession. The State appeals.

The record shows that in August of 1990, the defendant filed a motion to suppress statements he had made to a Department of Children and Family Services (DCFS) investigator on May 10, 1990. Among other things, the defendant argued that he had previously invoked his right to counsel and therefore his statement was taken in violation of his sixth amendment right to counsel. The trial court ruled in favor of the defendant on this basis and suppressed the statements.

The facts necessary for our determination of the issues the State raises are as follows. At the suppression hearing, DCFS investigator Michael Keys testified that prior to interviewing the defendant he knew the defendant had consulted an attorney. Keys knew this because on April 24 a Peoria police officer had telephoned and told him that the defendant's attorney had made an appointment to meet with someone from DCFS at the police station

on April 25. Keys was later told by the police department that the defendant's attorney had cancelled the meeting. A week later, the defendant's attorney cancelled a second meeting. At this point, Keys' supervisor told him to contact the defendant directly to determine whether the defendant wished to talk. Keys stated his purpose in interviewing the defendant was to question him about the allegations against the defendant and to obtain the defendant's statement about the circumstances of the case.

Keys testified that he telephoned the defendant at home on May 9 and said he needed to talk to him about a case Keys was working on. He and the defendant agreed to meet at the Peoria DCFS office the next day at 11 a.m. The next day, the defendant had car trouble, so Keys offered to pick him up. The defendant agreed and Keys subsequently brought him to the DCFS office.

Keys took the defendant to an inner office where two other DCFS investigators, Jay Brenneman and Terry Trumpey, were present. Although the door was closed, the defendant was never told he was under arrest, that he could not leave, or that he would go to jail if he did not cooperate. According to Keys, he did not administer *Miranda* warnings because it was against Department policy to do so. Neither he nor the defendant ever discussed whether the defendant wished to have counsel present. After at least 30 minutes of questioning, the defendant provided a detailed written statement.

The defendant testified at the suppression hearing that he was 21 years old and had obtained his GED. He stated that he hired an attorney as soon as he heard about the charges against him. He knew the charges were serious and his attorney also told him they were. The defendant stated that he knew his attorney had set up two appointments with the Peoria police, which his attorney later cancelled. He asserted that he did not know that someone from DCFS was to attend those meetings.

The defendant's testimony largely paralleled Keys' testimony regarding the telephone calls to set up their interview. The only exception was that he claimed he asked to meet at his house, but Keys said it would be better to meet at the DCFS office. The defendant added that he telephoned his attorney after Keys called, but he was not in his office. According to the defendant, he went to the DCFS office willingly the next day in order to tell his side of the story.

In addition to the above-noted testimony, we note that it is clear from the record that the Peoria police contacted DCFS to solicit its involvement in the case.

On appeal, the State argues that the trial court erred in suppressing the defendant's statements, because the DCFS investigators who spoke with him were not "agents of the state" for sixth amendment purposes. We disagree.

Questions on suppression motions are primarily factual determinations that will not be reversed on appeal unless they are against the manifest weight of the evidence. (*People v. Hagar* (1987), 160 Ill. App. 3d 370, 513 N.E.2d 628.) Questions of credibility and findings of fact are properly resolved in the trial court and are entitled to deference on appeal. *People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525.

The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to have the Assistance of Counsel for his defence." (U.S. Const., amend. VI.) This protection attaches as a matter of right at the initiation of adversary judicial proceedings, and a defendant is entitled to counsel at all critical stages of the proceedings. Government efforts to elicit information from the accused, including interrogation, represent "critical stages" at which the sixth amendment applies. (*Michigan v. Jackson* (1986), 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404.) Once the right to counsel has attached and been asserted, the State must scrupulously honor it. The sixth amendment imposes on the State an affirmative obligation to respect and preserve the accused's choice to seek assistance of counsel. (*Maine v. Moulton* (1985), 474 U.S. 159, 88 L. Ed. 2d 481, 106 S. Ct. 477.) Statements obtained in violation of a defendant's sixth amendment rights are inadmissible at trial. *Michigan v. Jackson* (1986), 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404.

The question of whether a DCFS investigator may be considered a prosecutorial agent has been previously addressed by this court in *People v. Hagar* (1987), 160 Ill. App. 3d 370, 513 N.E.2d 628. While in *Hagar* we addressed the issue in a fifth amendment context, we consider the analysis equally applicable in the sixth amendment setting. In *Hagar*, the analysis focused on the conduct and purpose or intent of the DCFS investigator. We found that DCFS employees who only give counseling and who do not solicit or encourage confessions are merely "case workers" and not prosecutorial agents. However, DCFS investigators who inquire into abuse

and neglect charges, and who instigate charges where appropriate, are prosecutorial agents of the State.

■ In the instant case, the facts reveal that the defendant invoked his right to counsel at the very beginning of the case. DCFS investigator Keys, who had been called by the police, was aware of this when he made direct contact with the defendant. Keys admitted that he made no attempt to contact the defendant's attorney to inform him of the meeting. Further, it is clear from the record that Keys' purpose in interviewing the defendant was to obtain a confession. In fact, the trial judge specifically found that Keys did not contact the defendant's attorney because he wanted to obtain a confession from the defendant. Based on the foregoing, we find that the trial court's decision was not manifestly erroneous.

■ The State next argues that assuming the defendant's sixth amendment right to have counsel present did attach, the defendant waived it by voluntarily meeting with and answering the questions of the DCFS investigator. We find the State's argument unpersuasive.

Once an accused invokes his right to counsel, interrogation must cease until an attorney has been made available. Subsequent waiver cannot occur unless the accused himself initiates further communication. (*Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880.) To establish waiver, it is incumbent upon the State to prove an intentional relinquishment or abandonment of a known right or privilege. (*Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019.) Courts apply a strict standard and indulge in every reasonable presumption against waiver. (*Brewer v. Williams* (1977), 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232.) A valid waiver cannot be established by showing only that the accused merely responded to further government-initiated interrogation. (*Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880.) Once the right to counsel is invoked, the accused has no duty to reassert it (*Brewer v. Williams* (1977), 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232), and a heavy burden rests with the government to respect or preserve the right (*Michigan v. Jackson* (1986), 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404).

The record in the instant case reveals that the defendant invoked his right to counsel when he was contacted by police on April 24, 1990, and told them to talk to his attorney. The defendant was formally charged on April 30 and appeared in court with counsel on May 1, 1990. Thus, adversarial judicial proceedings had already be-

gun against the defendant when DCFS investigator Keys contacted him.

It is important to again note that it was the DCFS investigator, not the defendant, who initiated the contact. Furthermore, the defendant stated that he tried unsuccessfully to contact his attorney following Keys' telephone call. This is an indication that it was not the defendant's intention to relinquish his right to counsel. We also note that nothing in the record indicates that the defendant did anything to affirmatively relinquish his sixth amendment right to have counsel present during the interview with Keys. We therefore conclude that the defendant did not waive this right.

For the foregoing reasons, the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

STOUDER, P.J., and SLATER, J., concur.