THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
MICHAEL R. JOHNSON, Defendant-Appellee.

Third District    No. 3—90—0771

Opinion filed November 19, 1991.

Kevin W. Lyons, State's Attorney, of Peoria (Elizabeth A. Klug, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Joseph M. Gibson, of Peoria, for appellee.

JUSTICE HAASE delivered the opinion of the court:

The defendant, Michael Johnson, was charged by indictment with aggravated criminal sexual abuse. (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(2)(i).) The defendant filed a motion to suppress statements. Following a hearing, the trial judge determined that the defendant's statement to an investigator from the Department of Children and Family Services (DCFS) was involuntary. The trial judge also suppressed the defendant's subsequent statement to police. The State appeals. We affirm.

The defendant lived with his grandmother, Augusta Faulkner. Faulkner is a licensed foster parent in Illinois. On June 3, 1990, a Sunday, Jay Brenneman, a DCFS investigator, contacted Faulkner by phone and requested that both she and the defendant come to his office. Brenneman informed Faulkner he wished to speak to her and the defendant about a problem with her foster parent license. After they arrived, Brenneman informed Faulkner he wished to speak with the defendant alone. Brenneman then took the defendant into a 10- by 14-foot windowless office. Brenneman questioned the defendant about an alleged sexual abuse case involving a five-year-old foster child who had been placed with Faulkner. The defendant adamantly denied he had improperly touched the child. After more than 45 minutes of questioning, however, the defendant orally admitted his involvement. During this time, Faulkner interrupted the interview several times and informed Brenneman that she wished to speak to the defendant. Brenneman informed Faulkner that the interview would be over in a few minutes and that she would have to wait in the hall outside the office. Brenneman then had the defendant sign a written statement

admitting his guilt and contacted the police. At no time did Brenneman inform the defendant of his constitutional rights.

The police then came to the DCFS offices and arrested the defendant. David Nelson, a Peoria police officer, interviewed the defendant at the police station. After informing the defendant of his *Miranda* rights, Nelson asked the defendant if he wished to talk about the incident. The defendant indicated he did and Nelson began the interview. The defendant informed Nelson that he had not improperly touched the foster child. After several minutes of questioning, Nelson confronted the defendant with a written copy of the statement he gave to Brenneman. The defendant ultimately admitted his guilt.

At the suppression hearing, Brenneman testified that the defendant was not under arrest during the interview and that he informed the defendant he was not a police officer. Brenneman did inform the defendant he was a criminal investigator with DCFS and that he worked together with the police and State's Attorney's office. According to Brenneman, the defendant was free to go at any time during the interview and he did nothing to make the defendant believe otherwise.

Augusta Faulkner, the defendant's grandmother, testified defendant had lived with her for 16 years, that he was enrolled in special education classes because he was slow, and that he was susceptible to suggestion. She also testified that he was taking the prescription medication Ritalin, which had been prescribed by Dr. Robert Hart because her grandson was hyper and for being kind of slow. She further testified that the investigator refused to let her accompany Michael during the interview. She stated that after 45 minutes she knocked on the door to the interview room and the investigator told her that Michael would be out in about five minutes. She said that 30 to 35 minutes more elapsed, at which time she knocked on the door again and asked "What's going on?" She testified the investigator said "Oh, we be out, just give us a few more minutes." She said later on the police came and took Michael away in handcuffs.

On cross-examination, she stated that Michael had always been held back in school and that he was never in regular classes and that he had been in special education ever since he had been out of kindergarten.

Michael Johnson, the defendant, testified about an interview that he had with Investigator Brenneman. He said that he kept saying to Investigator Brenneman that "I didn't do it." Michael said he was in

a room with the door closed with his grandmother out in the hallway. He further stated that the investigator told him:

"If I would tell him this happened, he would let me go home. But if I didn't tell him this happened, he—he'd have the police take me, like, to a police station, ask me questions; and when I go to trial, I would get—they would act, turn it around like I did criminal sexual assault, and I would go to the penitentiary. But if I didn't, if I did sign the paper, I would I get counseling. They would come to my office. He could come to my house, see a couple of guys a week at least one day a week, two days a week to give me counseling if I sign the paper; and I would get to go home and there wouldn't be nothing else. That, that's the reason—then he said—that's the reason, the reason I signed the paper. I told him that because I didn't do nothing to Jeffy Evans. I want to go home. He wouldn't let me leave unless I did that."

The defendant further testified that the police officer wouldn't allow him to leave and told him that if he did leave he, the investigator, would call the police and have him taken to the police station.

At the conclusion of the evidence, the court ruled that the confession to Brenneman was involuntary and should be suppressed. Following our recent decision in *People v. Hagar* (1987), 160 Ill. App. 3d 370, 513 N.E.2d 628, the court ruled the confession made to Nelson was also inadmissible. The court based its decision on the fact: (1) the defendant was one day over 17 years old at the time of the confession; (2) was denied access to his grandmother; (3) had developmental and learning problems; (4) was on medication for hyperactivity; and (5) was questioned in a custodial setting without the benefit of *Miranda* warnings. Given all of the above, the court ruled the confession to Brenneman was involuntary and should be suppressed.

Defendants have confessed to DCFS workers about child abuse and neglect in a number of cases in recent years. (See *People v. Kerner* (1989), 183 Ill. App. 3d 99, 538 N.E.2d 1223; *People v. Hagar* (1987), 160 Ill. App. 3d 370, 513 N.E.2d 628; *People v. Bradley* (1984), 128 Ill. App. 3d 372, 470 N.E.2d 1121.) Some confusion has arisen about the admissibility of inculpatory statements made to DCFS workers and whether subsequent inculpatory statements made to the police are also admissible evidence. We attempt to clarify these questions at this time.

The Department of Children and Family Services was created by the legislature to protect and promote the welfare of the children of the State of Illinois. (Ill. Rev. Stat. 1989, ch. 23, par. 5001 *et seq.*) In

charging DCFS with this weighty responsibility, the legislature vested DCFS with certain investigative powers. (Ill. Rev. Stat. 1989, ch. 23, par. 5021.) These powers include the right to subpoena the attendance and testimony of witnesses and the production of books and papers relevant to any DCFS investigation. In addition, the agency employs trained "Child Protective Investigators." (Ill. Rev. Stat. 1989, ch. 23, par. 5021.) These investigators are required to be trained in: (1) the detection of symptoms of child neglect and drug abuse; (2) dealing with families and children of drug abusers; and (3) child development, family dynamics and interview techniques. (Ill. Rev. Stat. 1990, ch. 23, par. 5021(d).) As we noted in *People v. Hagar* (1987), 160 Ill. App. 3d 370, 375, the role of DCFS "investigators" is to inquire into abuse and neglect charges and instigate charges where appropriate. These investigators, however, are not police officers and do not have powers of arrest. See Ill. Rev. Stat. 1989, ch. 38, pars. 2—13, 107—2.

In determining whether any inculpatory statement made to a DCFS investigator is admissible, a trial court must first determine whether the suspect's statement was voluntary. The United States Supreme Court has long recognized that involuntary statements procured by State actors are inherently unreliable and their use in criminal trials is not permitted. (*Hopt v. People of Territory of Utah* (1884), 110 U.S. 574, 28 L. Ed. 262, 4 S. Ct. 202 (adopting the common law rule prohibiting the use of confessions obtained by inducements, promises or threats); *Zaing Sung Wan v. United States* (1924), 266 U.S. 1, 69 L. Ed. 266, 45 S. Ct. 1; see also *People v. Fox* (1925), 319 Ill. 606, 150 N.E. 347.) This prohibition against the admission of involuntary confessions has been recognized and adopted by the Illinois legislature:

"Prior to the trial of any criminal case a defendant may move to suppress as evidence any confession given by him on the ground that it was not voluntary." Ill. Rev. Stat. 1989, ch. 38, par. 114—11(a).

The test to determine whether a confession is voluntary is whether the defendant's will was overborne at the time of the confession. (*People v. Kincaid* (1981), 87 Ill. 2d 107, 429 N.E.2d 508.) This determination must be based on the totality of the circumstances. Consideration of a defendant's age, education, mental capacity, emotional characteristics, and experience in criminal matters are all relevant in making this determination. (*People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466; *People v. Simmons* (1975), 60 Ill. 2d 173, 326 N.E.2d 383.) In *People v. Berry* (1984), 123 Ill. App. 3d 1042, 463 N.E.2d 1044, for example, the court suppressed a confession given by

a 17-year-old of subnormal intelligence when the police conduct "border[ed] on deception." In *People v. Stone* (1978), 61 Ill. App. 3d 654, 378 N.E.2d 263, the court overturned the admission of a 17-year-old boy's confession to indecent liberties with a child. The emotional vulnerability of the defendant was the primary factor leading to suppression of the statement. When confronted with a youthful defendant of subnormal intelligence, the greatest care must be taken to assure that a confession was voluntary and that it was not the "product of ignorance of rights or of adolescent fantasy, fright or despair." *In re Application of Gault* (1967), 387 U.S. 1, 55, 18 L. Ed. 2d 527, 561, 87 S. Ct. 1428, 1458; see also *People v. Simmons* (1975), 60 Ill. 2d 173, 326 N.E.2d 383.

Subnormal mentality does not, however, *ipso facto* make a confession involuntary. As long as the defendant has the capacity to understand the meaning and effect of the confession, it may be held voluntary. (*People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466.) Mental subnormality is, however, a factor to be considered when determining the voluntariness of a confession, and, "where accompanied by other factors indicative of an absence of voluntariness, will require that the confession be excluded." *People v. Hester* (1968), 39 Ill. 2d 489, 500, 237 N.E.2d 466, 474.

The State bears a heavy burden of showing that the statement was knowingly, intelligently and voluntarily made. (*People v. Kincaid* (1981), 87 Ill. 2d 107, 429 N.E.2d 508.) If the trial court finds that the confession was not voluntary, a broad application of the "fruit of the poisonous tree" doctrine is mandated. (*Oregon v. Elstad* (1985), 470 U.S. 298, 307, 84 L. Ed. 2d 222, 231, 105 S. Ct. 1285, 1292.) This does not mean that all the "fruits" of an involuntary statement are lost forever. Subsequently obtained evidence may be admitted as competent evidence where intervening events break the causal connection between the illegally obtained confession and the subsequently obtained evidence. (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) In order to break the causal connection between an involuntary confession and a subsequently obtained confession, the State must show the second confession was sufficiently an act of free will so as to purge the primary taint. As the Supreme Court noted in *Clewis v. Texas* (1967), 386 U.S. 707, 18 L. Ed. 2d 423, 87 S. Ct. 1338, when a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether the coercion has carried over into the second confession.

In the case at bar, the trial judge, after listening to all the evidence, determined that the defendant's statement was not voluntary. In a motion to dismiss, a trial court's factual determination is entitled to great weight and is not to be reversed on appeal unless it is against the manifest weight of the evidence. (*People v. Mallett* (1970), 45 Ill. 2d 388, 259 N.E.2d 241.) Based on a review of the record in this case, we are unable to state that the trial court's finding on the issue of voluntariness was against the manifest weight of the evidence. We, therefore, affirm the order of the trial court.

Another issue raised in this appeal deals with the question of whether or not *Miranda* warnings must be given by investigators for the Illinois Department of Children and Family Services. Only after a confession has been determined to be free from actual compulsion does the question of *Miranda* warnings become relevant. In this case, where the trial court found that the defendant's statement was not voluntary due to his age, mental capacity, medication and the custodial setting and technique of the investigator, it is not necessary to rule on the *Miranda* issue and we decline to do so at this time.

For the foregoing reasons, the judgment of the circuit court of the Tenth Judicial Circuit, Peoria County, Illinois, is hereby affirmed.

Judgment affirmed.

McCUSKEY and SLATER, JJ., concur.