THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LOREN DEAN KERNER, Defendant-Appellant.

Fifth District   No. 5—87—0351

Opinion filed May 3, 1989.

Curtis G. Quindry, of Newton, for appellant.

James Tomaw, State's Attorney, of Newton (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

After a jury trial, the circuit court of Jasper County sentenced the defendant on April 10, 1987, to a term of seven years' imprisonment for aggravated criminal sexual abuse in violation of section 12—16(c)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(1)). The defendant appeals. We reverse the judgment and remand the cause for further proceedings.

The prosecution arose from allegations of sexual abuse made by three young girls, aged 6, 7, and 10. The defendant was accused of having fondled the vaginas of two young girls at Sam Parr State Park in Newton, Illinois, on Sunday, August 3, 1986, and of having fondled breasts of another young girl at Boys Baseball Park in Newton on Thursday, August 14, 1986. At trial, Boyd Vieregge, a child-protective investigator with the Department of Children and Family Services (DCFS), testified that he had received a report from one of the children that the defendant had committed "bad touches" upon her on at least five occasions. Vieregge contacted Officer Lawrence Sroka of the Newton police department, who told Vieregge that the Newton police were also investigating the defendant. Vieregge requested the officer to assist in setting up a meeting with the defendant at the police station.

On August 20, 1986, Vieregge met the defendant, who had been

escorted to the Newton police station by Officer Bryan Green, to discuss the allegations of child abuse. While the defendant spoke with Vieregge in the office of the Newton chief of police, Officers Green and Sroka and the State's Attorney waited outside of the office. Vieregge advised the defendant that he would have to notify the police and the State's Attorney if the defendant inculpated himself in the criminal activity, but did not advise the defendant that he had the right to remain silent and the right to an attorney. The defendant then spoke with Vieregge for approximately 1½ hours and made several incriminating remarks during the interview. Vieregge asked the defendant if he would execute a written statement, and the defendant subsequently executed a statement inculpating himself in the alleged offense. Officer Sroka then entered the chief-of-police's office and arrested the defendant.

Subsequent to placing the defendant under arrest, Officer Sroka admonished the defendant pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and interrogated him regarding the alleged abuse. The defendant then made some incriminating remarks to Sroka, which Sroka testified to during the trial.

The defendant argues on this appeal that: (1) the trial court erred by admitting in evidence the statement taken by Vieregge, an investigator for the DCFS, without Vieregge's having admonished the defendant pursuant to *Miranda*; (2) the trial court erred by allowing Officer Sroka to testify to an oral statement taken from the defendant immediately after the statement given to Vieregge; (3) the trial court erred by refusing to give jury instructions defining the offense of battery; and (4) the trial court abused its discretion in sentencing the defendant to a term of seven years' imprisonment.

The defendant initially contends that the trial court erred by admitting in evidence a statement that he executed at the request of Vieregge of the DCFS in the office of the Newton chief of police on August 20, 1986. The defendant asserts that Vieregge acted as an investigative officer for purposes of *Miranda* without having admonished the defendant pursuant to *Miranda*. On February 24, 1987, the circuit court denied the defendant's pretrial motion to suppress the written statement, and the statement was admitted over objection as State's exhibit No. 4.

■ In *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612, the Supreme Court held that a prosecutor may not use an exculpatory or inculpatory statement arising from a custodial interrogation of a defendant unless the prosecutor can demonstrate the use of procedural safeguards effective to secure the

defendant's privilege against incriminating himself. The *Miranda* decision requires the agent of the prosecution to warn the defendant prior to questioning that: (1) he has the right to remain silent; (2) anything he says can be used against him in a court of law; (3) he has the right to have an attorney present; and (4) if he cannot afford an attorney, one will be appointed for him prior to questioning if he so desires. *Miranda*, 384 U.S. at 479, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630.

■ Previous case law indicates that the *Miranda* decision applies to any interrogating party who acts as an agent of the prosecution. In *People v. Baugh* (1974), 19 Ill. App. 3d 448, 451, 311 N.E.2d 607, 609, *cert. denied* (1975), 421 U.S. 920, 43 L. Ed. 2d 789, 95 S. Ct. 1587, the appellate court held that the trial court must exclude statements resulting from an interrogation of a defendant when the interrogating party failed to admonish the defendant pursuant to *Miranda*, and the interrogating party's "interests were so integrated and closely aligned with the authorities that his role in [the] case was adversary in nature and his conduct and questions directed at defendant were accusatory in character."

In *People v. Hagar* (1987), 160 Ill. App. 3d 370, 513 N.E.2d 628, a case with facts similar to those of the instant case, the appellate court affirmed the trial court's suppression of a statement given to two DCFS investigators by a defendant charged with aggravated criminal sexual assault. The *Hagar* court distinguished *People v. Bradley* (1984), 128 Ill. App. 3d 372, 470 N.E.2d 1121, a case where the appellate court determined that the trial court did not err by denying the defendant's motion to suppress a statement taken by a DCFS caseworker who received a defendant's incriminating statement without admonishing the defendant pursuant to *Miranda*. In *Hagar*, the defendant made the statement in a custodial environment, where in *Bradley* the defendant made the statement at his home. Additionally, in *Hagar* the DCFS employees were "investigators" whose role was to inquire into abuse and neglect charges, and to instigate charges where appropriate, where in *Bradley* the DCFS employee was a "caseworker" whose role was to counsel the defendant, and not to solicit or encourage the incriminating remarks. *Hagar*, 160 Ill. App. 3d at 375, 513 N.E.2d at 631.

■ In the case *sub judice*, as in *Hagar*, the DCFS employee was an investigator and interviewed the defendant as part of his investigation for the DCFS. Vieregge admitted during the pretrial suppression hearing that he was "required by law to notify the [S]tate's [A]ttorney and the police department of the complaint." Vieregge told the defendant that he would have to notify the police and the State's Attorney if

the defendant's statements indicated criminal activity. Vieregge was thus prepared, subsequent to taking the defendant's statement, to assist the police and the State's Attorney in their prosecution of the defendant. The defendant executed his written statement on a form Vieregge obtained from the Newton police. Officers Sroka and Green, and the State's Attorney, waited for Vieregge to finish interviewing the defendant before entering the room, where Officer Sroka immediately arrested the defendant. Furthermore, Vieregge exchanged information with Officer Sroka, who was handling the criminal investigation of the defendant, both before and after Vieregge's interview with the defendant. These factors indicate that Vieregge's role in the investigation was integrated with that of the Newton officers and the State's Attorney, and adverse to the interests of the defendant. Vieregge acted as a "conduit for information elicited from defendant and used by the authorities in the prosecution of defendant." (*People v. Baugh* (1974), 19 Ill. App. 3d 448, 451, 311 N.E.2d 607, 609.) Thus, Vieregge was an agent of the prosecution for purposes of *Miranda.*

■■■ We also note that the setting of the investigation was custodial in nature. The *Miranda* decision applies only to "custodial" interrogations, which the Court defined as "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." (*Miranda*, 384 U.S. at 478, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630.) The determination of whether the defendant was in custody at the time of the interrogation depends on several relevant factors, including: (1) the place of the interrogation; (2) statements or nonverbal conduct indicating an accused is not free to leave; (3) the extent of the knowledge of the officers and the focus of their investigation; and (4) the intention of the officers. (*People v. Newsome* (1983), 117 Ill. App. 3d 1005, 1007-08, 454 N.E.2d 353, 355.) In the instant case, the circumstances of Vieregge's interrogation indicate that the defendant was in a custodial setting during the questioning. Vieregge interrogated the defendant in the office of the chief of police. The door of the office was kept closed and locked at all times. Officers Green and Sroka, and the State's Attorney, blocked the only exit from the office. Vieregge had information regarding the defendant's culpability of the offense prior to the questioning, and the focus of Vieregge's investigation was at all times upon the defendant. Officer Sroka intended to arrest the defendant, and did arrest the defendant, immediately after the interview. Thus we find, from the factors prescribed in *Newsome*, that the defendant was in custody for purposes of *Miranda.*

■■■ The standard of review for a motion to suppress is whether

the finding of the trial court was manifestly erroneous. (*People v. Brown* (1980), 88 Ill. App. 3d 514, 519, 410 N.E.2d 505, 509, *cert. denied* (1981), 451 U.S. 1019, 69 L. Ed. 2d 392, 101 S. Ct. 3010.) Vieregge's role in the interrogation clearly indicates that he was an instrumentality of the prosecution, and the evidence indicates that the interrogation took place while the defendant was "in custody" for purposes of *Miranda*. Consequently, Vieregge was required to give *Miranda* warnings to the defendant prior to interrogating him. The trial court's failure to suppress Vieregge's statement was manifestly erroneous, and we must therefore reverse the court's judgment and remand the cause for a new trial.

The defendant's second contention is that the trial court erred by allowing Officer Sroka to testify to an oral statement of the defendant taken immediately after the statement to Vieregge. The trial court denied the defendant's pretrial motion to suppress the statement to Sroka and Sroka testified at trial as to the defendant's statement. The defendant objected to Officer Sroka's testifying because the defendant alleged that the statement made to Sroka was "fruit of the poisonous tree" obtained from Vieregge, and the statement was thus tainted by Vieregge's failure to give *Miranda* warnings.

■ "Under Illinois law, the admissibility of defendant's subsequently warned confession after an initial *Miranda* violation depends upon the voluntariness of the second statement. [Citation.] Voluntariness is determined after a consideration of the totality of the circumstances and depends upon whether the accused's will was overborne at the time of the statement. [Citations.] The fact that the first statement is inadmissible does not automatically render a subsequent statement inadmissible." (*People v. Fuller* (1986), 141 Ill. App. 3d 737, 744, 490 N.E.2d 977, 983.) We are unable to determine from the record whether the defendant made his statement to Officer Sroka voluntarily. Upon remand, the court should conduct a rehearing to determine the voluntariness of the defendant's statement to Sroka.

The defendant next contends that the trial court erred by refusing to give jury instructions defining the offense of battery. The record indicates that the defendant tendered proposed jury instructions setting forth the elements of battery, accompanied by verdict forms for battery. The court sustained the State's objection to these instructions and the instructions were not given to the jury.

■■ Section 12—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(a)) defines battery as where an individual "intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of

an insulting or provoking nature with an individual." In *People v. Reynolds* (1987), 152 Ill. App. 3d 216, 218, 504 N.E.2d 163, 165, the appellate court acknowledged that a defendant may be entitled to instruct a jury on a lesser included offense. However, the court noted that the evidence must permit a jury rationally to find the defendant guilty of the lesser offense and not guilty of the greater offense. (*Reynolds*, 152 Ill. App. 3d at 218, 504 N.E.2d at 165.) The *Reynolds* court determined that the record failed to indicate any evidence under which the jury could find the defendant guilty of the lesser offense of attempted burglary because the evidence was clear that someone had burglarized the victim's house. The court concluded that, when the evidence indicates that a defendant is either guilty of the greater offense or not guilty of any offense, the court may properly refuse an instruction on the lesser offense. *Reynolds*, 152 Ill. App. 3d at 219, 504 N.E.2d at 165.

■■■ In the instant case, the court properly refused to give the instruction on the lesser offense of battery because the defendant is either guilty of the greater offense of aggravated criminal sexual abuse or not guilty of any offense. The defendant has consistently argued that he did not touch the victims' sex organs or breasts, or, if he had, that the touching was unintentional. If the jury believed the defendant's version of the facts, then it could only conclude that he had not committed any offense. The only other possibility is that the touching was intentional. If there were an intentional touching, under the evidence presented, the touching of the victims' sex organs or breasts could only have been for sexual gratification. Thus the defendant would have committed aggravated criminal sexual abuse, not merely battery. Accordingly, the jury could either find the defendant guilty of aggravated criminal sexual abuse or find him not guilty of any offense. The trial court therefore correctly refused to give the instruction for battery.

The defendant's final contention is that the trial court abused its discretion in sentencing him to an extended term of seven years' imprisonment. We need not rule on this point since we are reversing the lower court's judgment and remanding the cause for a new trial.

For the foregoing reasons, we reverse the judgment of the circuit court of Jasper County and remand the cause for further proceedings.

Reversed and remanded.

WELCH, P.J., and HOWERTON, J., concur.