634 N.E.2d 395 (1994)
262 Ill. App.3d 302
199 Ill.Dec. 556
In re E.M., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. E.M., Respondent-Appellant).
No. 2-93-0723.
Appellate Court of Illinois, Second District.
May 16, 1994.
*396 Carol L. Anfinson, Aurora, for E.M., a Minor.
James E. Ryan, DuPage County State's Atty., William L. Browers, Deputy Director State's Atty. Appellate Prosecutor, Jerome T. Genova, Calumet City, for the People.
Justice GEIGER delivered the opinion of the court:
This action was brought on a petition charging the respondent, a minor, with the theft of a brown leather jacket. The juvenile court judge, without a jury, found that the petition was proved. The minor was adjudicated a delinquent minor and placed on probation. The issues on appeal are: (1) whether the Miranda issue was waived when it was raised during the bench trial, but not in the post-trial motion; (2) whether the court erred when it did not suppress the minor's confession when the high school dean of students did not administer Miranda warnings prior to questioning him; and (3) whether the court erred when it admitted the oral testimony that the school records indicated that a certain locker was assigned to the minor. We affirm.
On January 26, 1993, a second amended petition for an adjudication of delinquency and wardship was filed, alleging in paragraph 3(a) that E.M., the 15-year-old respondent minor, committed the offense of theft by possession, in that he knowingly obtained control over certain stolen property, a brown leather jacket having a value of less than $300, under such circumstances as would reasonably induce the minor to believe that the property was stolen, intending to deprive the owner permanently of the use of the property in violation of section 16-1(a)(4) of the Criminal Code of 1961 (Ill.Rev.Stat.1991, ch. 38, par. 16-1(a)(4) (now 720 ILCS 5/16-1(a)(4) (West 1992))). In paragraph 3(b), the minor also was charged with committing theft in that he knowingly exerted unauthorized control over the same leather jacket, intending to deprive the owner permanently of the use of the property in violation of section 16-1(a)(1) of the Criminal Code of 1961 (Ill.Rev.Stat.1991, ch. 38, par. 16-1(a)(1) (now 720 ILCS 5/16-1(a)(4) (West 1992))). The minor denied both charges of theft.
On February 22, 1993, a juvenile adjudicatory hearing was held before a judge. Larry Schulte, dean of students at Fenton High School in Bensenville, testified that on May 6, 1992, a student came into his office, asked not to be identified, and said that he had seen the minor take a brown leather jacket and place it in a certain locker. Dean Schulte looked in the school records and found that the minor was assigned the reported locker. Dean Schulte and Bruce Nichols, a police liason officer who was assigned to Fenton High School from the Bensenvilie police department, went to the locker. Dean Schulte opened the locker with a school key and found the brown leather jacket hidden inside another jacket which was in the locker. Officer Nichols witnessed Dean Schulte remove the jacket from the locker.
Dean Schulte presumed that the other jacket, which he described as a Starter jacket, belonged to the minor since he had seen the minor wear one like it, and it was in the locker assigned to the minor. According to Dean Schulte, he had the minor removed from class and brought to his office.
*397 According to Dean Schulte, he questioned the minor in his office. Dean Schulte testified that only he and the minor were present in his office during the questioning. At first, the minor denied knowing about the stolen jacket. According to Dean Schulte, he informed the minor that a student told him that he saw the minor take the leather coat out of one locker and place it in another locker. According to Dean Schulte, when he informed the minor that the jacket in question was found in his locker, inside his jacket, the minor confessed that the brown leather jacket did not belong to him and that he had taken it. Dean Schulte testified that the minor gave him no further details or information as to how or why he took the jacket. Dean Schulte informed the minor that he was going to be suspended from school and that there would be a referral to the Bensenville Police Department in accordance with "standard operating procedure."
According to Dean Schulte, he and the minor were alone in his office during the questioning and neither of them left during the questioning. Officer Nichols came into his office only after the questioning and after Dean Schulte told the minor that he was going to be suspended and that there would be a referral to the Bensenville Police Department. Dean Schulte's office is in a complex of several Deans' offices. The office occupied by Officer Nichols is across the hall from Dean Schulte's office.
Both Dean Schulte and Officer Nichols characterized the questioning as a school disciplinary proceeding. After the disciplinary proceeding, according to Dean Schulte, in accordance with "standard operating procedure," he turned the minor over to Officer Nichols who entered the Dean's office after the disciplinary proceeding. Once they were in Officer Nichols' office, Officer Nichols gave the minor Miranda warnings which were witnessed by Dean Schulte. After the Miranda warnings were given, the minor refused to talk about the theft. Officer Nichols released the minor.
Although Dean Schulte referred the minor to Officer Nichols following the school disciplinary proceeding, Dean Schulte did not immediately inform Officer Nichols that the minor had admitted his culpability. In fact, according to Officer Nichols, he was not informed that the minor admitted his culpability to Dean Schulte until January 6, 1993, eight months after the incident in question.
According to the minor, while he was eating lunch, Officer Nichols came and got him and escorted him to Dean Schulte's office. The minor testified that he was questioned the whole day by Dean Schulte. He also testified that Officer Nichols repeatedly came into and went out of the office. The minor testified that he did not leave the office until he was released by Officer Nichols. He also testified that after Officer Nichols read him Miranda warnings, he invoked his right to remain silent. He testified that Dean Schulte asked him questions even after he had invoked his right to remain silent. The minor testified that his jacket was a red Chicago Bulls windbreaker with insulation, commonly known as a Starter jacket.
The minor's attorney objected to the admission of the testimony that the locker was assigned to the minor. The attorney argued that the foundation testimony was insufficient for admission under the business records exception to the hearsay rule. The locker records themselves were not in evidence. The objection was overruled.
Prior to the adjudicatory hearing, the defense attorney had filed a motion to suppress the minor's confession. He argued that motion at the close of the evidence at the adjudicatory hearing. As part of that argument, he stated that Dean Schulte should have given the minor his Miranda warnings prior to questioning him. He stated that the minor was in custody of Dean Schulte. He stressed the fact that the minor was 15 years old at the time of the incident. The judge denied the motion to suppress the confession.
Immediately after the court denied suppression, final arguments were heard on the case. The judge found Dean Schulte's testimony credible that the minor confessed to stealing the jacket. He found that the petition was proved as to theft under paragraph 3(b), but not as to theft by possession under paragraph 3(a).
*398 The minor filed a written post-trial motion, but did not renew his previous argument that Dean Schulte should have advised him of his Miranda rights. The minor did argue in his post-trial motion that the testimony that the locker in question was assigned to him should not have been admitted since it was hearsay, and the foundation testimony was insufficient for admission under the business records exception to the hearsay rule. The minor's post-trial motion was denied. This appeal followed.
The first issue on appeal is whether the Miranda issue was waived when it was not raised in the post-trial motion. We note that the minor challenged the admissibility of the confession in his motion to suppress and at the adjudicatory hearing. By raising the Miranda issue in his motion to suppress and by objecting to the admissibility of evidence of the confession at the adjudicatory hearing, the minor has preserved consideration of the issue on appeal. (See People v. Wright (1987), 161 Ill.App.3d 967, 973, 113 Ill.Dec. 35, 514 N.E.2d 817.) The general rule is "that in a bench trial a post-trial motion is not necessary to preserve for review claims of error if such errors were in some manner brought to the attention of the trial court." (Wright, 161 Ill.App.3d at 973, 113 Ill.Dec. 35, 514 N.E.2d 817.) Accordingly, we address the minor's argument that evidence of his confession should have been suppressed because it was unlawfully obtained during a custodial interrogation which was not preceded by the giving of Miranda warnings.
In People v. Wilson (1984), 124 Ill.App.3d 831, 80 Ill.Dec. 175, 464 N.E.2d 1158, the appellate court stated:
"While it is true that the prosecution may not introduce statements stemming from a custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the accused's privilege against self-incrimination [citations], the term `custodial interrogation' refers only to questioning initiated by law enforcement officers after the suspect was taken into custody or otherwise deprived of his freedom in any significant way [citation]. Confessions or admissions made in response to interrogation by private citizens are admissible even though the accused had not been advised of his Miranda rights before making them. [Citation.]" Wilson, 124 Ill.App.3d at 839-40, 80 Ill. Dec. 175, 464 N.E.2d 1158.
The School Code (105 ILCS 5/24-24 (West 1992)) confers upon educators in loco parentis status which extends to nondisciplinary as well as disciplinary matters (Kobylanski v. Chicago Board of Education (1976), 63 Ill.2d 165, 171-72, 347 N.E.2d 705).
In the present case, the record indicates that Dean Schulte was a school administrator standing in loco parentis and acting independently of the police, when he questioned the minor within a school disciplinary proceeding about the theft of another student's brown leather jacket. This is evidenced in that Dean Schulte, rather than Officer Nichols, opened the minor's locker and discovered the brown leather jacket. Further, it was Dean Schulte who removed the minor from class and called him to his office for disciplinary action. Both Dean Schulte and Officer Nichols testified that Nichols was not present in Dean Schulte's office when Dean Schulte questioned the minor in a school disciplinary proceeding. Indeed, Dean Schulte's disciplinary actions were so independent of Officer Nichols that Officer Nichols testified that he was not even informed that the minor had confessed to his culpability in the theft until eight months after the incident. After receiving Miranda warnings from Officer Nichols and refusing to discuss the matter with Nichols, the minor was released to attend the day's classes. Based on these facts, we conclude that Dean Schulte was a school administrator standing in loco parentis and acting independently of the police when he questioned the minor within a school disciplinary proceeding about theft of the brown leather jacket. See Wilson, 124 Ill.App.3d at 839-40, 80 Ill.Dec. 175, 464 N.E.2d 1158.
The minor cites three cases that suggest that persons in authority and working with the police in a criminal investigation are required to issue Miranda warnings. We find that the cases cited by the minor are distinguishable from the present case.
*399 The minor first cites People v. Diesing (1978), 67 Ill.App.3d 109, 23 Ill.Dec. 781, 384 N.E.2d 575, wherein the defendant, an inmate at the county jail's inmate work release program, was questioned in the office of the work release supervisor concerning apparent marijuana usage. (Diesing, 67 Ill.App.3d at 110, 23 Ill.Dec. 781, 384 N.E.2d 575.) In Diesing, this court stated:
"The rule of Miranda has been held to apply to interrogation by a parole officer [citation], and to the questioning of a probationer by his probation officer [citation]. The rationale of these cases is that both parolees and probationers are under heavy psychological pressure to answer inquiries made by their supervising officers. We agree with the reasoning and hold that it is equally applicable to one in the position of the defendant who is the inmate of a work release center." Diesing, 67 Ill.App.3d at 111, 23 Ill.Dec. 781, 384 N.E.2d 575.
We find that the facts in the present case are distinguishable from the facts in Diesing. In the present case, the minor stood before a school administrator in an educational setting, rather than before a correctional officer, and direct supervisor, at the county jail. The psychological pressures placed upon a student in an educational setting versus those placed upon an inmate at a correctional facility are distinguishable.
The minor also cites People v. Baugh (1974), 19 Ill.App.3d 448, 311 N.E.2d 607, wherein the suspect was taken by police to the home of his alleged victim for identification purposes. (Baugh, 19 Ill.App.3d at 449-50, 311 N.E.2d 607.) In Baugh, the court held that the victim's attorney was acting as a police instrumentality when the suspect was interrogated by the attorney in the presence of the police who brought him to the victim's home. (Baugh, 19 Ill.App.3d at 450-51, 311 N.E.2d 607.) The Baugh court summed up the attorney's role as follows:
"[The attorney's] interests were so integrated and closely aligned with the authorities that his role in the case was adversary in nature and his conduct and questions directed at defendant were accusatory in character." Baugh, 19 Ill.App.3d at 451, 311 N.E.2d 607.
We find that Baugh is distinguishable from the present case. In Baugh, the police brought the suspect to the victim's home and were present during the interrogation. (Baugh, 19 Ill.App.3d at 449-50, 311 N.E.2d 607.) The police initiated the meeting between the suspect and the victim's attorney wherein the victim's attorney acted as a police instrumentality. In the present case, Dean Schulte initiated the questioning when he summoned the minor to his office. Construing the evidence to favor the State, Officer Nichols was not present during the questioning. In fact, the record establishes that Dean Schulte did not even inform Officer Nichols that the minor had incriminated himself until eight months after the incident. We find that Dean Schulte was not acting as an instrumentality of the police at the time of the questioning.
The minor also cites People v. Kerner (1989), 183 Ill.App.3d 99,131 Ill.Dec. 667, 538 N.E.2d 1223, wherein an investigator with the Department of Children and Family Services (DCFS) was required to give Miranda warnings prior to questioning a defendant. (Kerner, 183 Ill.App.3d at 105, 131 Ill.Dec. 667, 538 N.E.2d 1223.) The DCFS investigator informed the defendant that he would have to notify the police and the State's Attorney if the defendant's statements indicated criminal activity. (Kerner, 183 Ill. App.3d at 103-04, 131 Ill.Dec. 667, 538 N.E.2d 1223.) In Kerner, the court found that the DCFS investigator was "prepared, subsequent to taking the defendant's statement, to assist the police and the State's Attorney in their prosecution of the defendant." (Kerner, 183 Ill.App.3d at 104, 131 Ill.Dec. 667, 538 N.E.2d 1223.) In Kerner, police officers and the State's Attorney waited for the DCFS investigator to finish interviewing the defendant before entering the room, where the defendant was immediately arrested. (Kerner, 183 Ill.App.3d at 104, 131 Ill.Dec. 667, 538 N.E.2d 1223.) Furthermore, the DCFS investigator exchanged information with the police both before and after his interview with the defendant. Kerner, 183 Ill.App.3d at 104, 131 Ill.Dec. 667, 538 N.E.2d 1223.
*400 In the present case, Dean Schulte's disciplinary action taken against the minor was independent of Officer Nichols' investigatory activities. The record is uncontroverted that Dean Schulte did not even inform Officer Nichols, until eight months after the incident, that the minor had made statements which illustrated his culpability in theft of the brown leather jacket.
We therefore conclude that the minor's rights under Miranda were not violated and that the evidence of the minor's confession was properly admitted. See Wilson, 124 Ill. App.3d at 839-40, 80 Ill.Dec. 175, 464 N.E.2d 1158.
The final issue on appeal is whether the court erred when it admitted the oral testimony that the school records indicated that a certain locker was assigned to the minor. The minor argues that the trial court erred when it admitted Dean Schulte's testimony that the school records stated that the locker was assigned to the minor. He claims there was not proper foundation, as required by the business records exception to the hearsay rule, and that admission was made without the appropriate records. The State argues that the oral testimony was not introduced for the truth of the matter asserted and that it therefore was properly admitted as nonhearsay evidence.
Hearsay evidence is in-court testimony of an out-of-court statement, which is offered to establish the truth of the matter contained in the statement, and the value of which rests on the credibility of someone other than the witness. (Caponi v. Larry's 66 (1992), 236 Ill.App. 660, 675,176 Ill.Dec. 649, 601 N.E.2d 1347.) However, out-ofcourt statements that are offered not for the truth of the matter asserted, but rather for another purpose, are not hearsay. Caponi, 236 Ill.App.3d at 675, 176 Ill.Dec. 649, 601 N.E.2d 1347.
In the present case, we find that the testimony was offered to explain why Dean Schulte opened the particular locker in question. It was not introduced to prove the truth of the matter asserted. We therefore find that the statement was not hearsay and that it was admissible.
For all of the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.
Affirmed.
INGLIS, P.J., and McLAREN, J., concur.