THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ALFONSO T. DIEPPA, Defendant-Appellee.

Second District    No. 2—04—0087

Opinion filed June 14, 2005.

John A. Barsanti, State's Attorney, of St. Charles (Lawrence M. Bauer and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Jack Hildebrand, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

A police officer stopped defendant, Alfonso T. Dieppa, for a traffic offense. After learning of an active warrant for defendant's arrest, the officer arrested defendant, secured him in a squad car, and searched his car. During the search, the officer opened the glove compartment and saw a bank bag. He opened the bag and found a gun, which he seized. Defendant later spoke to the officer about the gun. Defendant was charged with two counts of aggravated unlawful use of a weapon (720 ILCS 5/24—1.6(a)(1), (a)(3)(A), 24—1.6(a)(1), (a)(3)(c) (West 2002)) and one count of unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 2002)).

Defendant moved to suppress the gun and the statement, contending that (1) under *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), they were not the fruit of a valid search incident to arrest; and (2) they were not the fruit of a valid inventory search. The trial court suppressed the evidence, and the State appealed (see 188 Ill. 2d R. 604(a)(1)). Because we agree with the State that the evidence was the product of a valid search incident to arrest, we reverse and remand without deciding whether the evidence was also the product of a valid inventory search.

We summarize the pertinent evidence from the hearing on defendant's motion. Aurora police officer Che Earwood testified that on the evening of February 22, 2003, he was on duty, driving a marked squad car with Officer Ellis as a passenger. Heading south on Pennsylvania Avenue, Earwood saw defendant turn right without signaling, then head north on Pennsylvania Avenue. Defendant's car had no license plates. Defendant parked on the side of the street. Earwood pulled up behind defendant, who was alone. Defendant exited his car, but Earwood ordered him back inside and told him that he was being stopped for failing to use his turn signal. After obtaining defendant's driver's license, Earwood returned to his squad car. He learned that there was an active warrant to arrest defendant for failing to appear in a civil case.

Earwood exited his squad car, arrested defendant, and cited him for failing to use his turn signal and not having a valid registration. Earwood confined defendant in the squad car. Without obtaining defendant's consent, he then searched defendant's car. Earwood found a small packet under the driver's seat and another one on the rear floorboard; each packet contained a white powdery substance that field-tested positive for cocaine. Earwood opened the glove compartment in the front passenger's side of the car. At the hearing, Earwood could not recall whether he unlocked the glove compartment with defendant's key or whether it was unlocked when he opened it.

Inside the glove compartment was a bank bag that was zipped closed. Earwood removed the bag, unzipped it, and saw that it contained a semiautomatic pistol. Earwood carried the gun and the suspected cocaine back to his squad car. Upon seeing the gun, defendant spontaneously stated that his house had been "shot up" before and that he needed the gun to protect himself and his business.

Defendant testified as follows. On the evening of February 22, 2003, he activated his turn signal, turned onto Pennsylvania Avenue, and drove north. When the car stalled, defendant locked the glove compartment, where he kept a bank deposit, and parked. He saw the flashing lights of a police squad car. Thinking that the police had come to assist him, he started to exit his car. However, an officer told him to step back inside. Defendant did so. The officer asked defendant for his driver's license and proof of insurance. Defendant complied. The officer went to his squad car, returned, and arrested defendant pursuant to a warrant in a civil case. Defendant exited his car and gave the officer the keys. The officer secured him in the squad car and then searched defendant's car.

The trial court suppressed the gun and the statement, holding that they were not discovered by a valid search incident to arrest. The court explained, "They certainly had the reason to arrest him. I don't see that they searched it incident to that arrest." The State appealed.

The State contends that the gun and statement were obtained by a lawful search incident to arrest. Noting that the trial court found that defendant was arrested lawfully, the State argues that the search of the passenger compartment of defendant's car, including the glove compartment, was proper under *Belton*. According to the State, *Thornton v. United States*, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127 (2004), controls this case and establishes that the search was proper even though defendant was secured in the back of the squad car at the time. We agree.

■ In reviewing a trial court's ruling on a motion to suppress evidence, we accept the trial court's factual findings unless they are against the manifest weight of the evidence, but we review *de novo* the ultimate issue of whether the search was constitutional. *People v. Pitman*, 211 Ill. 2d 502, 512 (2004). Here, the trial court held that the arrest of defendant was proper. Defendant does not dispute this holding, which is well supported by the evidence and in accordance with the law; the trial court credited Earwood's testimony that he observed defendant committing two traffic offenses and that there was a valid arrest warrant. Therefore, the only issue before us is the validity of Earwood's search of the car and his seizure of the gun from the glove compartment. As the relevant facts are essentially undisputed, we review this issue *de novo*.

■ *Belton* held that, when a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of the arrest, search the passenger compartment of the automobile. *Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864. The officer may also examine the contents of any containers, open or closed, that are found within the passenger compartment. *Belton*, 453 U.S. at 460-61, 68 L. Ed. 2d at 775, 101 S. Ct. at 2864.

In *Thornton*, the Court made clear that *Belton* allows a search even when the officer first makes contact with the defendant after the defendant exits the vehicle and even if the defendant lacks any access to the vehicle during the search. In *Thornton*, a police officer saw the defendant driving nearby and discovered that his license tags did not match his car. Before the officer could pull the defendant over, the defendant parked and exited his car. The officer stopped the defendant and patted him down and found illegal drugs. The officer arrested the defendant, placed him in the patrol car, then searched the passenger compartment of the defendant's car. He found a gun under the driver's seat. The defendant was charged with a drug offense and two firearms offenses. He moved to suppress the drugs and the gun. The trial court denied the motion, and the defendant was convicted.

The Supreme Court upheld the search. The Court explained that, under a *Belton* analysis, it was irrelevant whether the defendant was inside the car or outside of it when the officer initiated contact with him, as long as the defendant was a recent occupant of the car. *Thornton*, 541 U.S. at 622, 158 L. Ed. 2d at 913-14, 124 S. Ct. at 2131. Furthermore, the validity of the search did not depend on whether anything in the passenger compartment was likely to be readily accessible to the defendant. *Thornton*, 541 U.S. at 622-23, 158 L. Ed. 2d at 914, 124 S. Ct. at 2132. Stressing the need for a clear rule that police officers can readily understand and apply, the Court held that, once an officer finds probable cause to arrest, he may search "the entire passenger compartment." *Thornton*, 541 U.S. at 622-23, 158 L. Ed. 2d at 914, 124 S. Ct. at 2132. Thus, the search of the defendant's car was permissible even though the defendant was securely confined in the patrol car at the time.

*Thornton* controls this appeal. Here, Earwood legally arrested defendant in accordance with the active warrant. When Earwood searched defendant's car, defendant was a recent occupant, having just parked it. That defendant was outside the car when Earwood stopped him is legally irrelevant under *Thornton*, as is the fact that he lacked any realistic access to the passenger compartment when Earwood searched it.

■ Because Earwood could legally search the passenger compartment of the car, he could also legally search the glove compartment. The glove compartment, whether locked or unlocked, was a "container," as was the bank bag inside it. See *Belton*, 453 U.S. at 460 n.4, 69 L. Ed. 2d at 775 n.4, 101 S. Ct. at 2864 n.4 ("container" is "any object capable of holding another object" and "thus includes closed or open glove compartments *** bags *** and the like"); *United States v. Woody*, 55 F.3d 1257, 1269-1270 (7th Cir. 1995) (locked glove compartment may be searched per *Belton*).

Defendant asks that we depart from *Belton* and its progeny and hold the search unconstitutional on state law grounds. He points out that a number of states have already rejected *Belton*. See, *e.g.*, *State v. Eckel*, 374 N.J. Super. 91, 100, 863 A.2d 1044, 1050 (2004) ("We conclude that unless and until our Supreme Court definitively decides otherwise, *Belton* does not represent the law in New Jersey under the greater protections provided by our State Constitution"); *Commonwealth v. White*, 543 Pa. 45, 56-57, 669 A.2d 896, 901-02 (1995). We, however, are compelled to reject this invitation. The Illinois Supreme Court has adopted the *Belton* rule. See *People v. Bailey*, 159 Ill. 2d 498 (1994). We cannot simply disregard federal case law where our own supreme court has already adopted it, for we are bound by our supreme court's decisions. *Orr v. Edgar*, 298 Ill. App. 3d 432, 442 (1998). Moreover, our supreme court has held that the Illinois Constitution's search-and-seizure clause is to be construed in "lockstep" with the United States Supreme Court's construction of the fourth amendment to the United States Constitution. See *People v. Lampitok*, 207 Ill. 2d 231, 240-41 (2003); *People v. Krueger*, 175 Ill. 2d 60, 75-76 (1996); *People v. Tisler*, 103 Ill. 2d 226, 241 (1984).

Defendant might have argued for a narrow application of *Belton* by citing *People v. Stehman*, 203 Ill. 2d 26 (2002). Although defendant does not cite *Stehman*, we will nonetheless address it because it is our supreme court's most recent application of *Belton*. In *Stehman*, a police officer called out the defendant's name as the defendant walked away from his car to enter his workplace. The officer approached the defendant, ascertained his identity, and arrested him on an outstanding warrant. After the officer patted down the defendant, handcuffed him, and put him into the backseat of a squad car, he searched the defendant's car. The officer seized drug paraphernalia, which the trial court later suppressed. *Stehman*, 203 Ill. 2d at 28-32.

The supreme court upheld the suppression order. The court observed that *Belton* set forth a "bright-line rule that the passenger compartment lies within the reach of the arrested occupant" and may thus be the subject of a search that is contemporaneous with a valid

arrest. *Stehman*, 203 Ill. 2d at 34. However, at the time, the rule had not been extended to circumstances " 'where the concern for officer safety is not present to the same extent [as in *Belton*] and the concern for the destruction or loss of evidence is not present at all.' " *Stehman*, 203 Ill. 2d at 35, quoting *Knowles v. Iowa*, 525 U.S. 113, 119, 142 L. Ed. 2d 492, 499, 119 S. Ct. 484, 488 (1998). *Stehman* presented such a situation, as the defendant's first contact with the officer occurred after the defendant exited the vehicle. *Stehman*, 203 Ill. 2d at 36. Noting the split of authority over whether *Belton* should be extended to such a case, the supreme court declined to do so. *Stehman* held that the search was impermissible because the concerns underlying the *Belton* rule—officer safety and the need to preserve evidence— did not necessitate the search under the facts of the case. *Stehman*, 203 Ill. 2d at 38.

*Stehman* predates *Thornton*, and, arguably, the cases conflict. The issue, as framed by the *Stehman* court, was "whether *Belton*'s bright-line rule extends to a situation where the first contact the defendant has with the officer occurs after exiting the vehicle." *Stehman*, 203 Ill. 2d at 36. The court found that *Belton* did not apply in such circumstances, but qualified its rule, noting that the occupants of a vehicle cannot avoid a *Belton* search by merely stepping outside a vehicle as officers approach but that, on the other hand, the police may not artificially create a situation as a pretext for a search. *Stehman*, 203 Ill. 2d at 39, 41. *Thornton* flatly held that *Belton* governs even when an officer does not make contact until the person arrested has left the vehicle. Arguably, then, given our supreme court's adherence to the lockstep doctrine (*Lampitok*, 207 Ill. 2d at 240-41), *Stehman* is no longer good law in the wake of *Thornton*.

However, given the details of the supreme court's opinion in *Stehman*, it appears that the supreme court may very well decide to interpret our state constitution more broadly in an instance such as this. It is well established that Illinois courts have "the authority to interpret provisions of our state constitution more broadly than the United States Supreme Court interprets similar provisions of the federal constitution." *People v. Krueger*, 175 Ill. 2d 60, 74 (1996).

Two elements of the reasoning of *Stehman* suggest that the supreme court may do so here. First, the supreme court expressly referenced the Illinois Constitution in its discussion of the law. See *Stehman*, 203 Ill. 2d at 33-34. Second, and more significantly, *Stehman* noted and *Thornton* acknowledged a large split in authority regarding whether the arrest, outside a vehicle, of a recent occupant justifies a search of the interior of the vehicle. Compare *United States v. Arango*, 879 F.2d 1501, 1506 (7th Cir. 1989) (upholding search of vehicle despite

fact that arrest occurred one block from vehicle), with *United States v. Hudgins*, 52 F.3d 115, 119 (6th Cir. 1995) ("However, where the defendant has voluntarily exited the automobile and begun walking away from the automobile before the officer has initiated contact with him, the case does not fit within *Belton*'s bright-line rule, and a case-by-case analysis of the reasonableness of the search under *Chimel* becomes necessary"); see also *Stehman*, 203 Ill. 2d at 36-39 (collecting cases). Thus, the supreme court could have come to the same conclusion that the United States Supreme Court did in *Thornton*, with ample support in cases from across the nation. Instead, it made a reasoned decision to reject those authorities and instead followed those supporting the rule it ultimately set forth. It expressly found such authorities "persuasive." *Stehman*, 203 Ill. 2d at 36. In short, the Illinois Supreme Court independently considered the issue later addressed in *Thornton* and rejected the rule announced in that case. We therefore cannot assume that the court will simply abandon the rule due to *Thornton*. These considerations are particularly compelling in light of the court's concern regarding the sorts of problems that "rote application of *** *Belton*" may create. *Stehman*, 203 Ill. 2d at 41-42.

Nevertheless, we conclude that *Stehman* provides no protection for defendant in the instant case. Here, Earwood had reasonable grounds to stop defendant, as he saw defendant commit two traffic violations. Defendant exited his car before Earwood actually confronted him but after Earwood acquired reasonable grounds for the stop. Thus, Earwood did not " 'artificially creat[e] a situation to fit within an exception to the fourth amendment's warrant requirement.' " *Stehman*, 203 Ill. 2d at 41, quoting *United States v. Arango*, 879 F.2d 1501, 1506 (7th Cir. 1989).

In light of the foregoing, we reverse the order of the circuit court of Kane County suppressing the evidence at issue, and we remand this cause for further proceedings.

Reversed and remanded.

O'MALLEY, P.J., and HUTCHINSON, J., concur.