No. 2--05--0823
_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lee County. |
| Plaintiff-Appellant, | ) ) | No. 05--CF--145 |
| v. | ) ) ) | |
| NIKOLAUS J. PANKHURST, | ) ) | Honorable David T. Fritts, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

_____

JUSTICE O'MALLEY delivered the opinion of the court

The State appeals the judgment of the circuit court granting the motion of defendant, Nikolaus J. Pankhurst, to quash his arrest and suppress evidence based on his high school officials' failure to precede their questioning of him with warnings pursuant to Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).  We reverse and remand, finding that the school officials were not agents of the police when they questioned defendant and therefore were not required to provide Miranda warnings.

Defendant was charged with possession of cannabis (720 ILCS 550/4(c) (West 2002)), delivery of cannabis on school grounds (720 ILCS 550/5.2(d) (West 2002)), and possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2002)).  The charges arose from marijuana and drug paraphernalia seized from defendant by school officials, from an

incriminating statement he made to school officials, and from a later incriminating statement he made to police. Defendant filed a motion to quash his arrest and suppress evidence. In his motion, defendant argued (1) the school officials lacked reasonable and articulable suspicion to search him; (2) he was in "the custody of the police" when he made his incriminating statement to school officials yet was not given warnings pursuant to Miranda; and (3) the Miranda violation tainted his subsequent statement to police.

At the hearing on his motion, defendant withdrew his claim that the search of his person by school officials violated his right against unreasonable searches and seizures and proceeded solely on his claim that his incriminating statements were inadmissible under Miranda. The parties stipulated to the following facts. On May 16, 2005, Mr. Grady, principal of Dixon High School, was advised by an undisclosed source that defendant and another student, Halfacre, were in possession of cannabis. Grady and Travis McGuire, the dean of students, summoned defendant to Grady's office. Grady asked defendant to empty his pockets, whereupon defendant relinquished some cannabis. Halfacre was also found with cannabis. Grady called the police. Dixon Officers Miller and Friday responded and learned that defendant and Halfacre were in separate rooms. Miller sought out defendant while Friday sought out Halfacre. After Friday advised Halfacre of his Miranda rights, Halfacre told Friday that the cannabis found on his person was given to him by defendant. Meanwhile, Miller went to McGuire's office, where defendant was located. After a short time, Grady entered and asked Miller to leave. Miller left, and defendant remained with Grady and McGuire. Grady closed the door. During questioning by Grady and McGuire, defendant admitted that he sold cannabis to Halfacre. Grady ended the interview and

informed Miller of defendant's confession. Miller and Friday then arrested defendant. After receiving Miranda warnings, defendant made another incriminating remark.[1]

The State called Officer Miller to testify to the events that occurred when he went to McGuire's office. Miller testified that, when he entered the office, McGuire and defendant were present. Miller observed cannabis on McGuire's desk and assumed that it had been seized from defendant. McGuire informed Miller that he was attempting to phone defendant's family members. Miller testified that he spoke "about casual stuff" with McGuire between his phone calls. Miller did not tell defendant that he was under arrest or restrain him in any way. When asked if he spoke to defendant, Miller replied, "It may have

---

[1]The content of this statement is not indicated in the record. Defendant's motion simply states that "Officer Miller read [defendant] his Miranda Rights and obtained a second confession." Neither the parties' stipulation nor Miller's testimony reveals the nature of this statement.

just been a name or something. It wasn't anything questioning [sic] as far as the event."

When asked if defendant was free to leave at that point, Miller replied, "Probably not, no."

Miller testified that, when Grady entered the office, he asked Miller to leave. Miller left the office, and Grady and McGuire remained inside with defendant. Grady closed the door.

Miller testified as follows when asked about the specific circumstances of his encounter with defendant in McGuire's office:

"[ASSISTANT STATE'S ATTORNEY]: Officer Miller, was Mr. Grady or Mr. McGuire acting on your behalf when they asked you to leave the room?

A. I don't know what their intention was.

Q. So you hadn't given them instructions or anything of that nature?

A. No. The only conversation I had with Principal Grady was just when he asked me

to leave the room and I said okay.

* * *

[THE COURT]: Officer Miller, you testified that [defendant] was not free to leave?

A. Well, it was a pending investigation.

Q. But you didn't tell him to remain, did you?

A. No, I did not.

Q. How would he know that he wasn't free to leave?

A: I'm assuming by the fact that the Principal closed the door, that was the only exit out of the room.

Q.  That's what I was afraid of.  Were you giving your answer based upon what you     saw that occurred or based upon the fact that he was not free to do because of [sic] you felt, do you think he was not free to go because of the Principal's actions or because of your actions?

A.  I guess it would be both."

Miller further testified that he waited in a chair about six feet from the office door while Grady and McGuire interviewed defendant.  The interview lasted 10 minutes.

The trial court granted defendant's motion.  In its written memorandum, the court found that, when defendant gave his incriminating statement in McGuire's office, he "was not free to go and was being restrained by both the principal and the police."  The court concluded that, because defendant was not given Miranda warnings, his statement to Grady and McGuire was involuntary and therefore inadmissible.  Although the court suppressed both the statement to the school officials and the later statement to the officers, the court did not provide any reason for finding the latter statement involuntary despite the fact that it was preceded by Miranda warnings.  Having filed a certificate of impairment, the State timely appeals.

In reviewing a trial court's ruling on a motion to suppress evidence, we accept the trial court's factual findings unless they are against the manifest weight of the evidence, but we review de novo the ultimate issue of whether the evidence should be suppressed. People v. Dieppa, 357 Ill. App. 3d 847, 849 (2005).  Here, because the relevant facts are undisputed, our review is entirely de novo.  Dieppa, 357 Ill. App. 3d at 849.

In Miranda, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of [a] defendant unless it

demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda, 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612. The Court defined a custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (Emphasis added.) Miranda, 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612. "The determination of whether a defendant is 'in custody' for Miranda purposes involves '[t]wo discrete inquiries ***: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.' [Citations.] *** With respect to the latter inquiry, the accepted test is what a reasonable person, innocent of any crime, would have thought had he or she been in the defendant's shoes. [Citation.]" People v. Braggs, 209 Ill. 2d 492, 505-06 (2003); see also Florida v. Bostick, 501 U.S. 429, 438, 115 L. Ed. 2d 389, 400, 111 S. Ct. 2382, 2388 (1991) (in determining whether a person has been "seized" for fourth amendment purposes, "the 'reasonable person' test presupposes an innocent person" (emphasis in original)). "[S]tatements not induced by the police or an agent of the police are admissible in evidence without *** compliance" with Miranda's dictates. People v. Hawkins, 53 Ill. 2d 181, 185 (1972); see also Commonwealth v. Snyder, 413 Mass. 521, 532, 597 N.E. 2d 1363, 1369 (Mass. 1992) ("The Miranda rule does not apply to a private citizen or school administrator who is acting neither as an instrument of the police nor as an agent of the police pursuant to a scheme to elicit statements from the defendant by coercion or guile"). The question here is whether Grady and McGuire acted as agents of the police in questioning defendant.

The State claims to have "found no case directly on point that involves interrogation by school authorities," and instead relies on People v. Fuller, 319 Ill. App. 3d 180 (2001). In Fuller, the defendant, a store employee, was questioned on store premises by security guards about a theft that

one of the guards had witnessed the defendant perpetrate. The guards had no contact with the police prior to or during the questioning, but did contact the police after the defendant confessed. The appellate court held that the security guards "were not acting as agents of the police." Fuller, 319 Ill. App. 3d at 182. Fuller's relevance to the present case is limited because, unlike here, there was no police presence on the premises during the questioning.

We have found only two cases in Illinois addressing the relevance of Miranda to questioning by school authorities: People v. Shipp, 96 Ill. App. 2d 364 (1968), decided by the Third District Appellate Court, and In re E.M., 262 Ill. App. 3d 302 (1994), decided by this district. In Shipp, the defendant, a high school student, was summoned to the principal's office and interrogated by the principal about a false fire alarm. The principal did not advise the defendant of his Miranda rights before the interrogation, during which the defendant confessed. The appellate court dispensed in short order with the defendant's claim that he was in custody during the interrogation and therefore was entitled to Miranda warnings:

> "On this appeal we hold that the calling of a student to the principal's office for questioning is not an 'arrest' and he is not then in custody of police or other law enforcement officials. This situation does not fall within the scope of the Miranda decision as the Supreme Court has limited it. [Citation.]" Shipp, 96 Ill. App. 2d at 367.

In Shipp, unlike the present case, there was no police officer present when the questioning occurred. Thus, Shipp, like Fuller, is of no help in deciding when Miranda applies to questioning by private citizens that occurs in the presence of the police.

E.M., however, dealt with a situation quite similar to the one at hand. In E.M., the dean of students of a high school was advised by a student that E.M. had stolen a leather jacket and placed it in his locker. The dean opened E.M.'s locker and saw the jacket. The dean then dispatched the

school's police liaison officer to bring E.M. into the dean's office. There, the dean questioned E.M. about the theft allegation while the officer remained outside. The dean did not administer Miranda warnings to E.M. During the questioning, E.M. confessed to stealing the jacket. When the interview was over, the dean called the liaison officer into the office and, pursuant to school procedure, turned E.M. over to the officer. The officer advised E.M. of his Miranda rights. When E.M. refused to speak to the officer, he released E.M. The officer testified that the dean did not inform him of E.M.'s confession until eight months after the incident. E.M., 262 Ill. App. 3d at 304-05. The trial court denied E.M.'s motion to suppress his confession to the dean as obtained in violation of Miranda's requirements. The appellate court affirmed. The court first noted that the School Code (105 ILCS 5/24--24 (West 1992)) grants educators in loco parentis status, which extends to both disciplinary and nondisciplinary matters. E.M., 262 Ill. App. 3d at 307. The court found that the dean "was a school administrator standing in loco parentis and acting independently of the police, when he questioned [E.M.] within a school disciplinary proceeding about the theft." E.M., 262 Ill. App. 3d at 307. In support of this conclusion, the court noted: (1) the dean, not the officer, opened E.M.'s locker in response to the theft allegation; (2) the dean, not the officer, directed that E.M. be summoned for questioning; (3) the officer was not present during the questioning; and (4) the officer was not advised of E.M.'s confession until months after it occurred. E.M., 262 Ill. App. 3d at 307.

In the case at bar there is a similar independence of the school officials from the police. By the time the officers arrived at the school, Grady and McGuire had already initiated their investigation into the allegations of drug possession by summoning defendant and Halfacre, searching them for drugs, and then placing them in separate rooms. When

Miller arrived at McGuire's office, he did not question defendant about the allegations but at most asked him for his name. Miller's encounter with defendant was cut short when Grady entered the office and asked Miller to leave. Grady and McGuire saw fit to question defendant outside Miller's presence and did not obtain any direction or advice from Miller on how to conduct the investigation. Miller, we recognize, was immediately told about the results of the interrogation whereas the liaison officer in E.M. was not informed of the confession until months later--a fact found important by the appellate court in E.M. This difference is balanced out, however, by the fact that the liaison officer in E.M. actually escorted E.M. to the dean's office while Miller simply arrived to find defendant already present in McGuire's office. Grady and McGuire, we conclude, acted as independently of Miller as the principal in E.M. did of the liaison officer. See State v. Tinkham, 143 N.H. 73, 77, 719 A.2d 580, 583-84 (1998) (holding that school principal's questioning of the defendant did not implicate Miranda because, though the principal informed the police beforehand that she was going to question the defendant, there was no evidence of any "affirmative act by any police officer inducing [the principal] to question the defendant," nor did the police "[make] any suggestions to [the principal] or direct[] her course of action").

As we did in E.M., courts in other jurisdictions have analyzed Miranda issues arising in school settings by emphasizing that school officials are charged with maintaining order and discipline in their schools, and though sometimes these responsibilities entail the investigation of conduct that is not only disruptive but also criminal, this does not alone make those officials agents of the police. In State v. Biancamano, 284 N.J. Super. 654, 661, 663, 666 A.2d 199, 202-03 (App. Div. 1995), a case that, on facts almost identical to Shipp, reached the same conclusion, the court said:

"A school official must have leeway to question students regarding activities that constitute either a violation of the law or a violation of school rules. This latitude is necessary to maintain discipline, to determine whether a student should be excluded from the school, and to decide whether further protection is needed for the student being questioned or for others.

\* \* \*

\*\*\* School officials are neither trained nor equipped to conduct police investigations. However, as a matter of necessity, they must regularly conduct inquiries concerning both violations of school rules and violations of law. While the police may eventually be summoned, the need to question students to determine the existence of weapons, drugs, or potential violence in the school requires that latitude be given to school officials.

Of the trend of the law in this area, authors Wayne R. LaFave, Jerold H. Israel, and Nancy J. King have said

Courts have generally held that government agents not primarily charged with enforcement of the criminal law are under no obligation to comply with Miranda. Thus, at least where the official has not been given police powers, Miranda has been held inapplicable to questioning by school officials, welfare investigators, medical personnel, judges, prison counselors, and parole or probation officers. 2 W. LaFave, J. Israel  N. King, Crim. Proc. §6.10 c , at 622  2d ed. 1999 .

Foreign authorities have generally declined to apply Miranda s protections to interrogations by school officials in situations similar to the present case. In State v. Barrett, 683 So. 2d 331 (La. App. 1996), the school board of the defendant's high school had a drug detection team comprised of narcotics officers from the sheriff's department. The drug detection team regularly conducted searches of the defendant's high school using drug detection dogs. On the occasion in question, a drug detection

officer employed the dogs in a classroom while the students in the class, including the defendant, waited outside. The dogs alerted on the defendant's wallet, a search of which revealed a large quantity of cash. The defendant's bag was also searched, and a beeper was found inside. The principal asked the defendant why he had such a large amount of cash, and the defendant replied that he sold drugs. The defendant was sent to the principal's office, where the drug detection officer asked him where his car was located. When the defendant pointed out his car, the officer employed the dogs, which alerted to the hatchback of the car. A search of the car revealed marijuana. Barrett, 683 So. 2d at 334. The appellate court held that the defendant was not entitled to Miranda warnings before he was questioned by the principal and the officer:

> "When the principal asked defendant why he was carrying the money, defendant was not being questioned by a law enforcement officer and had not been taken into custody, detained, or deprived of his freedom of action, other than as appropriate considering his status as a student at school. Defendant also was not in custody or being detained when [the officer] asked him how he got to school, and where his car was located. Thus, the requirements of Miranda did not apply ***." Barrett, 683 So. 2d at 339.

Notably, the principal in Barrett was acting in concert with the officer from the very beginning of the drug sweep that ultimately led to the defendant's arrest. Thus, there was a stronger case in Barrett for finding that the principal was the agent of the police than there is in the present case, where the officer arrived on the scene only after defendant was searched and had no involvement in, nor was even present in the room during, Grady and McGuire's questioning of defendant.

In In re Drolshagen, 280 S.C. 84, 310 S.E.2d 927 (1984), the court rejected the minor's claim that he should have been given Miranda warnings before his questioning by school officials. The court's statement of the facts consisted entirely of the following four sentences:

"At the request of investigating police officers, appellant voluntarily reported to his school principal's office, where he was questioned by school officials, in the presence of the officers, as to his activities of the previous weekend. There was testimony that neither officer participated in the questioning. During this meeting, appellant confessed to the acts of vandalism of which he was subsequently convicted. At the Anderson County jail, he signed a written statement in the presence of his parents, after being advised of his <u>Miranda</u> rights."

Drolshagen, 280 S.C. at 84-85, 310 S.E.2d at 927.

The court summarily rejected the minor's <u>Miranda</u> argument, holding that "[m]erely because the questioning took place in the principal's office, in the presence of police officers, 'did not render it a custodial interrogation.' [Citation.]" <u>Drolshagen</u>, 280 S.C. at 85, 310 S.E.2d at 927. Unlike in the case at bar, the officers in <u>Drolshagen</u> were present in the room during the student's interrogation by the school officials. Arguably, then, there was more evidence of an agency relationship in <u>Drolshagen</u> than in the present case.

We have found one case where school officials were considered agents of the police. In <u>State v. Heirtzler</u>, 147 N.H. 344, 789 A.2d 634 (2001), the principal and the school's police liaison officer had what the officer described as "a silent understanding" that the officer would turn an investigation over to school officials when it appeared that he had no constitutional basis to conduct a search or seizure based on the information he possessed. <u>Heirtzler</u>, 147 N.H. at 347, 789 A.2d at 637. The officer admitted that "passing information to the school when he could not act was a technique used to gather evidence otherwise inaccessible to him." <u>Heirtzler</u>, 147 N.H. at 347, 789 A.2d at 637. Pursuant to this arrangement, the officer reported a possible drug transaction to the principal, who interrogated and searched the defendant in connection with the report. The court

agreed with the defendant that the principal was acting as the agent of the police in searching and interrogating him. Heirtzler, 147 N.H. at 351-52, 789 A.2d at 640-41. The court wrote:

> "Because they are not law enforcement officers, when school officials search for contraband in order to foster a safe and healthy educational environment, they are afforded greater flexibility than if a law enforcement officer performed the same search. [Citation.] If school officials agree to take on the mantle of criminal investigation and enforcement, however, they assume an understanding of constitutional criminal law equal to that of a law enforcement officer. In such circumstances, even if school officials claim their actions fall within the ambit of their administrative authority, they should be charged with abiding by the constitutional protections required in criminal investigations." (Emphasis omitted.) Heirtzler, 147 N.H. at 350-51, 789 A.2d at 640.

Neither in E.M., Drolshagen, Barrett, nor the present case was there evidence of an arrangement like that in Heirtzler, designed to circumvent constitutional protections.

Defendant seizes upon Officer Miller's testimony that defendant's liberty during his interview with Grady and McGuire was restrained by Miller's own actions as well as Grady's and McGuire's. However, Miller's opinion that he contributed to the restraint on defendant's liberty lacks support in the record. A police officer's subjective belief regarding whether the defendant was free to leave is not determinative if it was not communicated to the defendant. People v. Newsome, 117 Ill. App. 3d 1005, 1010 (1983). Miller did not tell defendant that he was not free to leave. The undisputed facts show that Miller's interaction with defendant was limited to asking defendant for his name. Although Miller's very presence outside the door may have intimidated defendant, E.M. holds that the presence of a police officer on school premises during a school official's questioning of a student regarding possible criminal conduct does not alone transform the official into an agent of the police.

Defendant cites People v. Pruitt, 278 Ill. App. 3d 194 (1996), in his favor. Pruitt, however, is entirely inapposite as it deals not with the right against self-incrimination but with the right against unreasonable searches and seizures. Perhaps defendant really means to argue the unreasonableness of Grady's seizure of the cannabis. Although defendant abandoned this argument in the trial court, a reviewing court may affirm on any basis in the record. People v. Reed, 298 Ill. App. 3d 285, 295 (1998). The record on the issue of the seizure, however, consists entirely of the parties' stipulation that Grady was advised that defendant was in possession of cannabis and consequently searched defendant, finding cannabis. There is no basis here for a claim that the seizure was unreasonable.

We conclude that Grady and McGuire were not agents of the police when they questioned defendant in McGuire's office and therefore were not required to advise defendant of his Miranda rights. As there was no Miranda violation affecting defendant's initial confession, we obviously do not reach defendant's argument that his subsequent confession to police was tainted by an earlier Miranda violation.

For the foregoing reasons, we reverse the trial court's judgment granting defendant's motion to suppress and remand this case for further proceedings.

Reversed and remanded.

CALLUM, J., concurs.

GROMETER, P.J., specially concurring:

While I wholeheartedly agree with the majority's resolution of the issue presented in this appeal, I write separately to emphasize that such an analysis has applicability only in the context of Miranda violations. Lest there be any confusion, the question of whether an individual is an agent of the police is not the same as whether an individual is a State actor. In this case, as the majority sets forth, the former question is relevant. More often, the determination of whether an individual is a State actor controls. See Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288, 295, 148 L. Ed. 2d 807, 816, 121 S. Ct. 924, 930 (2001) ("Our cases try to plot a line between state action subject to Fourteenth Amendment scrutiny and private conduct (however exceptionable) that is not"); see also Ferguson v. City of Charleston, 532 U.S. 67, 76, 149 L. Ed. 2d

205, 215, 121 S. Ct. 1281, 1287 (2001) ("Because MUSC is a *state hospital, the members of its staff are government actors, subject to the strictures of the* **F***ourth* Amendment"). This is true even in the context of a public school. In New Jersey v. T.L.O., 469 U.S. 325, 336-37, 83 L. Ed. 2d 720, 731, 105 S. Ct. 733, 740 (1985), the Supreme Court, while recognizing the particular characteristics of a school environment, held that, "[i]n carrying out searches and other disciplinary functions pursuant to such policies, school officials act as representatives of the State, not merely as surrogates for the parents, and they cannot claim the parents' immunity from the strictures of the Fourth Amendment." The Court came to this holding despite the fact that law enforcement personnel were not involved in the search at issue. Hence, the law as applied in this case is limited to alleged Miranda violations by school personnel. It does not exempt school officials generally from observing the requirements of the constitution, and it specifically has no application in fourth amendment cases.